OPINION OF THE COURT
Duncan S. McNab, J.
Petitioner John Doe (Hospital) herein moves this court for an order quashing and/or modifying two Grand Jury subpoenas duces tecum dated December 2, 1980 calling for production of the billing and medical records pertaining to approximately 96 specific former patients at petitioner’s facility during the periods January 1, 1973 through December 31, 1979 and July 1, 1965 through August 31, 1974. Petitioner objects to the turnover of these records on the narrow ground that the information sought is protected from disclosure by the physician-patient privilege as contained in CPLR 4504. Petitioner has previously produced for the Grand Jury on October 6, 1980 various other financial and business records requested by subpoena. However, respondent argues that the instant medical records are also essential to the Grand Jury’s investigation of charges that petitioner, a long-term care center for children with disabling medical *606 problems, has overbilled Medicaid (a) by billing for inpatient services allegedly rendered after the patients had already been discharged and (b) by billing for services already paid for by other sources without notifying Medicaid of the duplicate payments.
Petitioner also seeks an order (1) directing that the cost of reproduction of the documents sought be borne by respondent and (2) that, to the extent provided by CPL 190.50 (subd 7), the papers relating to the instant motion be sealed.
As to the issues of the cost and sealing, this court, under the authority of CPL 610.25 and 190.50 (subd 7), respectively, would grant the relief petitioner requests. (Respondent, it should be mentioned, has consented to the requested sealing.)
However, the court would find against petitioner on the question of doctor-patient privilege and would deny the motion to quash and/or modify.
CPLR 4504 (subd [a]) sets forth the doctor-patient privilege as follows: “§ 4504. Physician, dentist and nurse, (a) Confidential information privileged. Unless the patient waives the privilege]"a person authorized to practice medicine * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
As respondent points out, the privilege is entirely statutory; there was no such privilege at common law. Moreover, the validity of this particular privilege has been subjected to far more serious questioning by certain of the scholarly commentators than other existing privileges. (See, i.e., 8 Wigmore, Evidence [McNaughton rev], § 2380a; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4504.02.) McCormick, Evidence (2d ed, ch 11, p 226) sums up the pros and cons of the workings of the privilege with the following observation:
“no detailed recital of the evil results of the privilege is needed. They may be summed up in general terms:
“1. The suppression of what is ordinarily the best source of proof, namely, the physician who examined and treated *607 the patient, upon what is usually a crucial issue, namely, the physical or mental condition of the patient * * *
“3. The complexities and perplexities which result from a statute which runs against the grain of justice, truth and fair dealing. These perplexities inevitably produce a spate of conflicting and confusing appellate decisions, and encrust the statutes with numerous amendments, reaching for but never attaining the reconciliation of the privilege with the needs of justice.
“A palliative for these injustices is the application of the practice of strictly interpreting the statutes creating the privilege rather than the contrary rule of liberally interpreting them, which some courts have espoused.” (Emphasis added.)
He ultimately concludes (p 228), that “abandonment of the privilege seems the best solution.”
While the court here is not being asked to render an advisory opinion and need not determine the broad question of whether or not the privilege has retained its viability, the court finds itself in agreement with the strict interpretation recommended by the commentators. At the threshold, respondent stresses both in his answering papers and in the body of the actual subpoenas issued that “the patient medical records are required herein not for the purpose of examining what treatment a named Medicaid patient received, but rather to determine whether that patient received any treatment [or indeed was even an inpatient at the facility] on a day for which [petitioner] billed Medicaid”. Thus, since the privilege protects a patient’s reasonable expectation of privacy concerning information bearing upon his treatment, as opposed to incidental facts, such as date, place, and time, respondent’s argument that the information being sought herein falls outside the privilege in the first instance may have merit. (See Gourdine v Phelps Mem. Hosp., 40 AD2d 694; People v Decina, 2 NY2d 133.)
However, even assuming, arguendo, that the privilege is applicable to the instant records, it is well settled that the protection afforded by the privilege must, in a proper case, give way to an overriding public interest. In short, *608 the privilege was never intended to prevent disclosure of evidence of a crime. (See decision of Second Dept, in People v Mandel, 61 AD2d 563, revd on other grounds 48 NY2d 952; People v Lay, 254 App Div 372, citing Pierson v People, 79 NY 424; People v Doe, 96 Misc 2d 975 [Balbach, J.].) Furthermore, the patient records are not being sought for purposes of a public disclosure, but rather, to facilitate the paramount right of the Grand Jury to investigate allegations of possible criminal activity. (See Matter of Grand Jury Subpoenas [Morgenthau], 58 AD2d 1.)
Additionally, apart from the issue of doctor-patient privilege, respondent Special Prosecutor has an independent basis to require production of the instant records. Respondent correctly points out that by Federal law, a Medicaid provider must keep complete records of services provided under the program. Respondent’s authority to investigate the hospital industry along with other Medicaid providers having previously been sustained (see Matter of Mann Judd Landau v Hynes, 49 NY2d 128), it is beyond question that the instant records are embraced under the “required records” exception to the Fifth Amendment. (See Matter of Sigety v Hynes, 38 NY2d 260; Whalen v Roe, 429 US 589.)
Moreover, the cases relied upon by petitioner are clearly distinguishable from the present case. In both People v Doe (County Ct, Suffolk County, Dec. 7, 1978 [Seidell, J.]) and Matter of Lewis v Hynes (82 Misc 2d 256 [Dubin, J.], affd 51 AD2d 550), the Deputy Attorney-General had subpoenaed patient records not limited strictly, as here, to records of Medicaid patients. Petitioner’s reliance upon Matter of Neuman (NYLJ, Dec. 17, 1980, p 17, col 4 [Morrison, J.]), the most recent outgrowth of an investigation into the financial operations of Dr. and Mrs. Carl Neuman, an investigation which, incidentally, this court has had more than a passing familiarity with over the years (see People v Neuman, NYLJ, March 24, 1977, p 13, col 2; see, also, People v Neuman, 104 Misc 2d 324) is similarly misplaced.
As Judge Morrison noted in granting in part the Neuman’s application for modification, “the subpoenas at issue, if sustained in toto, would require the production of *609 all of the medical records of over 20,000 individuals (Matter of Neuman, NYLJ, Dec. 17, 1980, p 17, col 4, supra; emphasis added.) Here, on the other hand, the Special Prosecutor has carefully limited his request to the records of some 96 Medicaid patients.
Finally, the court would reject petitioner’s claim that absent a specific patient waiver, production would be barred, since any such requirement would be completely at odds with the express legislative purpose in designating respondent as the agency responsible for ferreting out Medicaid fraud, particularly where, as here, it is represented that the patient’s records have been passed along for examination by third-party insurers.
Finally, petitioner not having raised relevance as an issue, the court would not require a preliminary in camera inspection of the requested records pursuant to Matter of Hynes v Lerner (44 NY2d 329). Moreover, in the context of this Grand Jury proceeding the representations of materiality such as are made by the Special Prosecutor at page 4 of his affirmation dated January 9, 1981 should be deemed sufficient.
For all the foregoing reasons petitioner’s motion to quash and/or modify on the basis of physician-patient privilege must be denied in all respects. Petitioner is to turn over the records requested to the Grand Jury no later than Thursday, February 5, 1981.