897 P.2d 1352

Gwendolyn Denise BENTON, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF NAVAJO, the Honorable Edward L. Dawson, a judge thereof, Respondent Judge,

The STATE of Arizona, Real
Party in Interest.

No. 1 CA–SA 94–0113.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 25, 1994.

Review Denied July 13, 1995.

David J. Martin, Lakeside, for petitioner.

Melvin Bowers, Jr., Navajo County Atty. by Christopher E. Candelaria, Deputy County Atty., Holbrook, for real party in interest.

**OPINION**

KLEINSCHMIDT, Judge.

In this opinion we hold that the State may, without the permission of a victim, obtain the victim's medical records when such records are needed for the prosecution of a criminal case. On a night in October of 1993, police officers responded to a fight in progress at a motel room in Holbrook. One of the officers noticed that a window to the room had been broken and that the door to the room was ajar. Inside, the police found Gwendolyn Benton, the Petitioner, and a man named F.M., both of whom appeared to have been severely beaten. A man named Ricky Ward was also in the room. Benton and F.M. told the police that Ward had broken the window, come into the room, and started hitting them with beer bottles. Benton and F.M. were taken to the hospital for treatment, and Ward was arrested.

The State is prosecuting Ward for aggravated assault and burglary. As it turns out, Benton and Ward have a romantic relationship and have had a child together. Benton is not cooperating in the prosecution. The State asserts that it needs Benton's medical records relating to the treatment she received as a result of Ward's alleged assault, but Benton has refused to release these records. The trial court granted the State's request to produce the records.

■ Benton brought this special action asking us to vacate the trial court's order to produce the records. She argues that her medical records are protected by the constitutional provision commonly referred to as the "Victims' Bill of Rights", Ariz. Const. art. II, section 2.1, as implemented by the Victims Rights Implementation Act, Ariz.Rev. Stat.Ann. ("A.R.S.") sections 13–4401 to 13–4438. She also claims the records are protected by the physician-patient privilege. A.R.S. § 13–4062(4). We accepted special action jurisdiction because the issue presented requires us to interpret a constitutional amendment, *S.A. v. Superior Court*, 171 Ariz. 529, 530, 831 P.2d 1297, 1298 (App.1992), and because special action is the proper means to seek relief from an order for disclosure of information that a privilege is claimed to protect, *Church of Jesus Christ of Latter-Day Saints v. Superior Court*, 159 Ariz. 24,

25–26, 764 P.2d 759, 760–61 (App.1988). We entered an order denying relief and said that this opinion would follow.

### THE VICTIMS' BILL OF RIGHTS DOES NOT PRECLUDE THE PRODUCTION OF THE VICTIM'S MEDICAL RECORDS

■ Benton argues that the production of her records violates her right, under the Victims' Bill of Rights, to be treated with fairness, respect, and dignity and to be free from intimidation, harassment, or abuse. She also argues that the Victims' Bill of Rights, specifically as implemented in A.R.S. sections 13–4434[1] and 13–4419(C),[2] grants her a right to privacy which the trial court violated.

We have held that the Victims' Bill of Rights does not permit a victim to refuse to testify against the person on trial for committing the crime against the victim. We said, "[t]he Victims' Bill of Rights should not be a 'sword in the hands of victims' to thwart the prosecution of a wrongdoer." *S.A. v. Superior Court,* 171 Ariz. at 532, 831 P.2d at 1300. Nothing in the constitution or statutes indicates that a victim can impede a criminal prosecution by refusing to release medical records necessary for the prosecution of a defendant. Accordingly, this ground for the claim for relief has no merit.

### THE PHYSICIAN–PATIENT PRIVILEGE DOES NOT PRECLUDE PRODUCTION OF THE RECORDS

■ Benton also argues that her medical records are protected by the physician-patient privilege. The legislature codified the physician-patient privilege in A.R.S. section 13–4062(4) which reads:

A person shall not be examined as a witness in the following cases:

. . . .

4. A physician or surgeon, without consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

We conclude that the privilege does not apply under the circumstances of this case because the public's interest in protecting victims outweighs the privacy interest reflected in the physician-patient privilege. The Washington Supreme Court, in *State v. Boehme,* 71 Wash.2d 621, 430 P.2d 527 (1967), addressed this identical issue and held that the public policy mandating prosecution of criminals is more compelling than the physician-patient privilege. The defendant in *Boehme* was accused of poisoning his wife, who did not want to cooperate with the prosecution. *Id.* 430 P.2d at 529, 533. When the state attempted to discover her medical records and blood and urine samples, she claimed the physician-patient privilege. *Id.* at 534. The court held that the state could obtain the victim's medical records when required for a criminal prosecution. *Id.* at 536. The court said:

[The privilege] should not ... become a means whereby criminal activities of third persons may be shielded from detection, prosecution, and punishment, however magnanimous, compassionate or conciliatory the victim might otherwise wish to be. To allow the privilege to thus become a device by which the victim of an attempted crime could, without a civically paramount reason, thwart the course of a criminal proceeding against the perpetrator might well promote greater evils than the privi-

---

**1.** Arizona Revised Statutes section 13–4434 states: "Beginning January 1, 1992 the victim has the right at any court proceeding not to testify regarding the victim's addresses, telephone numbers, place of employment or other locating information unless the victim consents or the court orders disclosure on finding that a compelling need for the information exists. A court proceeding on the motion shall be in camera."

**2.** Arizona Revised Statutes section 13–4433(D) states: "Unless otherwise directed by the victim, the prosecutor may attend all interviews. If a transcript or tape of the interview is made and on request of the prosecutor, the prosecutor shall receive a copy of the transcript or tape at the prosecutor's expense."

lege was designed to avoid. The maintenance of an orderly society, and the circumvention of criminal activities, are functions of government which should not be subject to casual suppression by the operation of a procedural rule primarily designed for the purpose of aiding in the healing of physical ailments. [Citations omitted.]

*Id.*

In prosecutions which arise out of a domestic dispute, it is not unusual that a victim does not wish to cooperate with the prosecution. One city attorney from Los Angeles estimated that half of the victims in the Los Angeles area want to drop the charges in domestic violence cases. *Developments in the Law: Legal Responses to Domestic Violence,* 106 Harv.L.Rev. 1528, 1540 n. 86 (1993). They have various motives for doing so, including fear of reprisal, economic and emotional dependence on the defendant, or the desire to reconcile with the abuser. *Id.* at 1540. A man who batters his partner is likely to increase his violence and use of threats when he understands that intimidation of the victim can lead to dismissal of the case against him. Mary E. Asmus et al., *Prosecuting Domestic Abuse Cases in Duluth: Developing Effective Prosecution Strategies from Understanding the Dynamics of Abusive Relationships,* 15 Hamline L.Rev. 115 (1991). Without access to the medical records of a victim, especially a victim who refuses to cooperate with the state because of fear, dependence or the desire for reconciliation, a criminal prosecution can be totally frustrated.

■ Our conclusion is strengthened by the fact that since there was no physician-patient privilege at common law, it must be strictly construed. *State v. Morales,* 170 Ariz. 360, 363, 824 P.2d 756, 759 (App.1991). So too, the physician-patient privilege has never been absolute. Some exceptions to the privilege are legislative in origin. Physicians and others, for example, are required to disclose to third parties certain information disclosed or discovered during the physician-patient relationship. Physicians must report to the police gunshot and knife wounds which may have resulted from illegal activity. A.R.S. § 13–3806. Contagious or infectious diseases must be disclosed to the health department. A.R.S. § 36–621. Physicians must also disclose non-accidental injuries or evidence of physical neglect of minors to the police or the Department of Economic Security. A.R.S. § 13–3620. Thus, the legislature has found certain social interests sufficiently important to override the State's general interest in protecting confidential patient information from being disclosed to third parties. *Samaritan Health Services v. City of Glendale,* 148 Ariz. 394, 397, 714 P.2d 887, 890 (App. 1986) (discussing exceptions which the legislature has created to the physician-patient privilege).

■ Not every exception to a privilege established by statute is legislative in origin. The judiciary has also imposed some limitations on it. For example, the privilege is restricted to physicians. *See, e.g., Southwest Metals Co. v. Gomez,* 4 F.2d 215 (9th Cir. 1925) (indicating that the physician-patient privilege does not extend to nurses); *State v. LaRoche,* 442 A.2d 602, 603 (N.H.1982) (holding that admissions made to emergency medical technicians were not privileged). The privilege is not applicable if third parties are present to hear what a patient tells the doctor. *State v. Beaty,* 158 Ariz. 232, 240, 762 P.2d 519, 527 (1988). Information observed by laypersons is generally outside the scope of the privilege. *Greene v. New England Mut. Life Ins. Co.,* 108 Misc.2d 540, 437 N.Y.S.2d 844, 849 (1981). Incidental information, such as the fact of a consultation or its date, time, or place, is usually not protected by the privilege. *People v. Doe,* 107 Misc.2d 605, 435 N.Y.S.2d 656, 658 (1981). *Cf. State v. Alexander,* 108 Ariz. 556, 568, 503 P.2d 777, 789 (1972) (fact that client has consulted an attorney, the dates and places of his visits, and similar matters are outside the attorney-client privilege). An attack on the competence of an attorney constitutes a waiver of the attorney-client privilege. *State v. Moreno,* 128 Ariz. 257, 260, 625 P.2d 320, 323 (1981). The physician-patient privilege is waived when the privilege holder places a particular medical condition at issue. *Dan-*

*ielson v. Superior Court*, 157 Ariz. 41, 43, 754 P.2d 1145, 1147 (App.1987). Additionally, Arizona recognizes a crime-fraud exception to the attorney-client privilege. *Pearce v. Stone*, 149 Ariz. 567, 572–73, 720 P.2d 542, 547–48 (App.1986).

The Petitioner also suggests that the trial judge should not have ordered the production of the records without first reviewing them in camera. As a practical matter, in many cases it will be appropriate for the trial judge to review the requested records in camera to determine whether they are relevant to the issues at trial. In this case, where all that the State is seeking are the records relating to a specific assault, an in-camera inspection was not essential.

### CONCLUSION

We accept jurisdiction but deny relief. Benton's medical records are neither protected by the Victims' Bill of Rights nor the physician-patient privilege. The order of the trial court requiring production of the records is affirmed. Benton's request for attorney's fees is denied.

WEISBERG, P.J., and JACOBSON, J., concur.