[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: AMY MOLITOR'S MOTION TO QUASH
The following facts are set forth in the affidavit and memorandum submitted by Amy Molitor. The victim, Amy Molitor, is the fiancee of the defendant, Alex Kelly. On September 20, 1996, Molitor was involved in a motor vehicle accident which is the subject of the present matter. Upon arrival at the accident scene, the responding police officer found a "light-colored Nissan 300 ZX that had crashed and was resting on its roof." (Memorandum, p. 4.) The police officer "alleges that he observed a white male running through a section of brush and trees." (Memorandum, p. 4.) Fearing that there were possible casualties, the officer did not chase the individual, and instead returned to the accident scene where Molitor lay injured. Molitor was treated by medical personnel at the scene and was subsequently transported to Stamford Hospital for further treatment.
While not discovered at the scene of the accident, Kelly was later found at his home and was arrested. He has been charged with evasion of responsibility in operation of a motor vehicle in violation of General Statutes § 14-224(a) and failure to bring a motor vehicle to a full stop when signaled in violation of General Statutes § 14-223(b).
While Molitor was recovering in the hospital, an officer of the Darien Police Department requested that she authorize a release of her hospital records. (Affidavit, Para. 9.) Molitor refused to release her records. Consequently, the state's attorney subpoenaed her records from the hospital. (Affidavit, Para. 10.) The records are currently being held under seal in the clerk's office.
On March 2, 1998, this court denied Molitor's motion to intervene in the case of State v. Kelly, reasoning that she was attempting to bootstrap aspects of civil procedure onto a criminal matter, and in the process, injecting inappropriate collateral issues and concerns into the proceedings. (Transcript, 3/2/98, pp. 10-12.) This court, ascertaining that Molitor was actually attempting to challenge the subpoena, directed counsel to file a motion to quash in accordance with established criminal procedure. (Transcript, 3/2/98, pp. 14-15.) CT Page 9810
On March 9, 1998, Molitor filed a motion to quash, challenging the legality of the state's subpoena. In a supporting memorandum, filed with the motion to quash, Molitor contends that the subpoena is unlawful in that it violates her rights of privacy and confidentiality in her medical records, as well as her rights as a victim. This court disagrees. For the reasons that follow, Molitor's motion to quash is denied.
An overriding theme in Molitor's argument is that she, the victim, "did not request the [s]tate's [a]ttorney to prosecute [the defendant] in connection with the accident on September 20, 1996." (Memorandum, p. 10.) The court should not have to point out that it is the state's attorney, and the state's attorney alone, who has the discretion to prosecute violations of the laws of this state. "Prosecutors . . . have a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the . . . law. . . . This broad discretion . . . includes deciding which citizens should be prosecuted and for what charges they are to be held accountable." (Citation omitted; internal quotation marks omitted.) State v.Kinchen, 243 Conn. 690, 699, ___ A.2d ___ (1998).
The office of the state's attorney does not exclusively represent Molitor. That office represents the State of Connecticut, its people and the public interest. State v.Pouncey, 241 Conn. 802, 810-11, 699 A.2d 901 (1997). As long as reasonable grounds exist to prosecute an individual, and the state's attorney acts within the jurisdiction of his office, the courts have not and should not attempt to control the discretion inherent in that position. See State v. Kinchen, supra, 700;Blakeney v. Commissioner of Correction, 47 Conn. App. 568,575, ___ A.2d ___ (1998); State v. Menzies, 26 Conn. App. 674,680-81, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690
(1992).
In addition to her overall objection to the prosecution of the alleged crimes committed by the defendant on September 20, 1996, Molitor raises four arguments in her memorandum of law in support of her motion to quash. First, she argues that enforcing her constitutional rights as a victim would not create an adversarial position between herself and the state. Second, she argues that the subpoena of her medical records without her consent violates her rights of privacy and confidentiality, as well as her rights as a victim, under the United States and Connecticut constitutions and Connecticut General Statutes. CT Page 9811 Third, she argues the subpoena is illegal and in violation of General Statutes § 52-146o and § 4-104. Lastly, Molitor argues that an in camera review of her records would be inappropriate.
I. The Victims' Rights Amendment
Molitor cites the recent amendment to the Connecticut constitution, article first, § 8, entitled, "Rights of victims of crime," (Victims' Rights Amendment) as a basis for her motion to quash.[1] Molitor argues that as a victim, she has a right to be treated with fairness and a right of notice throughout the prosecution of the defendant. In general, the court agrees with that proposition. The court finds, however, that Molitor's interpretation of and reliance on the Victims' Rights Amendment is misplaced, for she attempts to place a construction on the amendment that was not envisioned by the legislature.
The legislative history of the Victims' Rights Amendment contains two dominant concepts. First, the legislature adopted the amendment to alleviate the frustration felt by victims by giving the victims a right to voice their concerns during the prosecution of criminal defendants. Second, the legislature explicitly attempted to provide some meaningful legislative history regarding its intent so that the courts would be better able to determine the proper scope to be accorded to the amendment. See 39 H.R. Proc., Pt. 9, 1996 Sess., pp 2849-2861.
Though recognizing certain rights inherent to victims of a crime, the Victims' Rights Amendment does not empower victims to direct the prosecution of a case. For example, regarding subsection 7, the right to object to the plea agreement, the legislature explicitly stated: "It is certainly not the intent to provide a veto power to a victim of a crime. . . . [T]he intent is to allow a victim to express an opinion, either for or against a plea bargain and make that actual statement to the court, rather than have to communicate it indirectly through the prosecutor. . . ." 39 H.R. Proc., supra, pp. 2819-20.
As this court noted in the proceedings of March 2, 1998, this matter is clearly a criminal case bearing the title State of Connecticut versus Alex Kelly. This case is not entitled "State of Connecticut versus Alex Kelly, et al, not State of Connecticut versus Amy Molitor, not Amy Molitor versus Alex Kelly or Alex CT Page 9812 Kelly versus Amy Molitor." (Transcript, 3/2/98, p. 10.) Indeed, our legislature, during discussion of the right to communicate with the state's attorney, in no uncertain terms stated that the right of communication was not intended "to [be] a right to direct the prosecution of the case, because it's the State of Connecticut versus the individual who's accused." 39 H.R Proc., supra, p. 2826; see Connecticut constitution, Article first, § 8, subsec. 6.
Furthermore, common sense and a review of the legislative history undermines the argument that "enforcing the constitutional rights of Molitor as a victim . . . does not create an adversarial relationship between victims and the state." (Memorandum, p. 12.) It is difficult for this court to understand Molitor's interpretation of her rights as a victim. If this court allowed Molitor to invoke the Victim's Rights Amendment to preclude the state from seeking evidence of the defendant's conduct, then the purpose of the amendment would be lost. The amendment attempts to alleviate any perceived or actual friction between the state and a victim in the prosecution of a defendant. Molitor's interpretation would place her in nothing other than an adversarial position with the state, as well as the intent of the legislature. The court refuses to give credence to what appears to be a disingenuous and unsupported position.
The court refers both the state and Molitor to the case ofBenton v. Superior Court, Navajo County, 182 Ariz. 466,897 P.2d 1352 (Ariz.App. Div. 1 1994). In Benton, the state brought a petition for production of a victim's medical records relating to treatment she received due to an alleged assault. Id., 1353. The victim, who was romantically involved with the defendant, refused to release medical records, arguing that the Victims' Bill of Rights provision of the Arizona constitution, article second, § 2.1,[2] and the physician-patient privilege granted her the right to refuse to release her records. Id.
The Arizona appellate court upheld the trial court's order to produce the records, stating that "[t]he Victims Bill of Rights should not be a sword in the hands of victims to thwart the prosecution of a wrongdoer. . . . Nothing in the [Arizona] constitution or statutes indicates that a victim can impede a criminal prosecution by refusing to release medical records necessary for the prosecution of a defendant." (Citation omitted; internal quotation marks omitted.) Id., 1354. CT Page 9813
The factual circumstances of Benton and the present case are strikingly similar. Both cases involve victims who refuse to cooperate in the prosecution of a defendant whose alleged crimes caused physical harm to the victim. Both cases involve victims who are romantically involved with the defendant. Both cases involve victims who seek to put their "rights" ahead of the interests of society in prosecuting crime. Upon reviewing the reasoning of Benton in conjunction with the words of our legislature, this court refuses to give credence to what appears to be the disingenuous and unsupported position advanced by Molitor that enforcement of her "rights" would not place victims in an adversarial position with the state.
II. Constitutional Arguments
Molitor next argues that her right to privacy under the United States and Connecticut constitutions has been violated by the subpoena of her medical records. Molitor, citing Horton v.Meskill, 172 Conn. 615, 641-42, 376 A.2d 359 (1977), concedes in her memorandum that the Connecticut constitution provides greater protections than those guaranteed under the United States constitution. (Memorandum, p. 21.) She does not cite, and the court cannot find, any cases that support her argument that her rights under the Connecticut constitution have been violated. This court also has reviewed and analyzed the extensive legislative history of the Victims' Rights Amendment, and concludes that there has been no deprivation of constitutional rights simply because the state subpoenaed the medical records of Molitor after she refused to cooperate in the prosecution of the defendant.
Turning to Molitor's federal constitutional claim, the United States Supreme Court has held that there is no explicit federal constitutional right of privacy. Roe v. Wade, 410 U.S. 113,152, 93 S.Ct. 705, 35 L Ed.2d 147 (1972). Implicit in the constitution, however, are "certain areas or zones of privacy. . . ." Id. These areas have traditionally encompassed issues relating to marriage, procreation, contraception, family relationships, and child rearing and education. See, e.g., id;Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817,18 L.Ed.2d 1010 (1967); Griswold v. Connecticut, 381 U.S. 479,85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Pierce v. Society of Sisters,268 U.S. 510, 45 S.Ct. 571, 69 L.Ed 1070 (1923); Meyer v.Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923);Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. CT Page 9814 832 (1897).
The principle that emerges from these cases is that the interest of the state must be balanced against the rights of the individual, sometimes requiring individual rights to give way to a legitimate or compelling state interest. See, e.g., Whalen v.Roe, 429 U.S. 589, 596-604, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (use of police power to control prescriptive use of otherwise illegal drugs does not violate constitutional right to privacy);Roe v. Wade, supra. 410 U.S. 154 (qualified right to abortion must be balanced against state's compelling interest to protect health, medical standards, and prenatal life); Doe v. Boroughof Barrington, 729 F. Sup. 376, 384 (D. N.J. 1990) (privacy in medical records subject to balancing of state's interest in disclosure). Upon review of the line of cases interpreting such zones of privacy, in addition to review of the plethora of cases submitted by counsel for Molitor, this court finds that the minimum threshold of federal constitutional protections has not been violated by the issuance of a subpoena for Molitor's records. This is clearly the case where such records are held under seal and cannot be viewed by any party without an order of the court.
Whalen v. Roe, a case cited by Molitor, supports such an interpretation. See Whalen v. Roe, supra, 429 U.S. 589, 601. In that case, a New York law requiring the disclosure to the state health department of personal information for all patients who have received prescriptions for dangerous legitimate drugs was upheld by the United States Supreme Court. See id., 598-601. The law in question called for disclosure of information such as the patient's name, address, age, the name of the treating physician, the dispensing pharmacy, and the prescribed drug and dosage. The Supreme Court reasoned that the statute was "the product of an orderly and rational legislative decision." Id., 597-98. The Court refused to strike down the law over concerns of privacy, finding that any perceived potential for unauthorized disclosure of private records to the public was nor supported by the record or past experience with similar statutes in other states. Id., 601. Moreover, the Supreme Court in Whalen did not recognize a physician-patient privilege that would prevent statutorily mandated release of medical records for legitimate purposes. See Whalen v. Roe, supra, 429 U.S. 602, n. 28 ("The physician-patient evidentiary privilege is unknown to the common law. In States where it exists by legislative enactment, it is subject to many exceptions and to waiver for many CT Page 9815 reasons.")[3]; see also Edelstein v. Dept. of Public Health Addiction Services, 240 Conn. 658, 662, 692 A.2d 803 (1997) (Connecticut does not recognize common law physician-patient privilege of confidentiality). Therefore, the court finds that Molitor, with respect to her medical records, has not established an intrusion into the zones of privacy that the Supreme Court has chosen to recognize.
III. Legality of the Subpoena
As noted above, Connecticut does not recognize a common law privilege for communications between a physician and a patient.Edelstein v. Dept. of Public Health Addiction Services,
supra, 240 Conn. 662. "In 1990, [however], the legislature created a broad physician-patient privilege when it enacted Public Acts 1990, No. 90-177, codified at § 52-146o." Id. Our Supreme Court has held that the purpose of the act is "to protect the confidentiality of communications between a physician and a patient." Id.
Without citing relevant case law, relying instead on General Statutes § 52-146o and § 4-104, Molitor challenges the legality of the state's subpoena. Citing Edelstein v. Dept. ofPublic Health Addiction Services, supra, 240 Conn. 662, Molitor argues that § 52-146o was adopted to protect the confidentiality of communications between patients and physicians in civil and criminal matters. Molitor argues that "in enacting the statute, the [l]egislature did not provide for any waiver of privilege or any disclosure of any information in the context of a criminal proceeding at all whether pursuant to a subpoena or otherwise." (Emphasis in original.) (Memorandum, p. 28.) This claim has no basis in logic or law.
Principles of statutory construction require the court to seek and give effect to the apparent intent of the legislature.State v. Gordon, 45 Conn. App. 490, 497, 696 A.2d 1034, cert granted, 243 Conn. 911, 701 A.2d 336 (1997). "It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . ." Id.
The court is at a loss to understand Molitor's reading of CT Page 9816 § 52-146o as encompassing criminal actions. The express language of § 52-146o provides that "in any civil action
or any proceeding preliminary thereto or in any probatelegislative or administrative proceeding, a physician or surgeon . . . shall not disclose . . . any communication made to him . . . or obtained by him from, a patient . . . [regarding] any information obtained by personal examination of a patient, unless the patient . . . explicitly consents to such disclosure." (Emphasis added.) Nowhere in the statute is there a provision extending the privilege to criminal matters. "On its face, the statute omits any reference to the privilege in regard to disclosure in a criminal case." J. Bruckmann, G.D. Nash R. Emanuel, Connecticut Criminal Caselaw Handbook, (1992 Supplement.)
In addition, the court fails to find plausible Molitor's argument that § 52-146o encompasses criminal matters when the court examines other privilege provisions in the very same chapter. For example, § 52-146c explicitly provides that in "civil and criminal actions" disclosure of communications between psychologists and patients is prohibited. There is absolutely no reference to criminal actions in § 52-146o. The legislature could have provided that § 52-146o applies to criminal actions, as it did only a few sections earlier with § 52-146c. The legislature did not do so. Vieving §§52-146o and 52-146c together, the court cannot reconcile the interpretation urged by Molitor with the legislature's clear delineation of matters to which the statutory privilege applies. Next, Molitor argues that the state's subpoena was improperly issued under General Statutes § 4-104. Molitor maintains that the state's attorney did not have the authority to issue the subpoena because, as such, the issuance of the subpoena constitutes an investigatory action. Molitor's classification of the subpoena as investigatory, however, does not effect its validity under General Statutes § 4-104.
In State v. Morrill, a case challenging the subpoena of a grand jury witness, our Supreme Court held that the power of a state's attorney to issue subpoenas under General Statutes §51-286a is not limited by General Statutes § 51-85, which broadly authorizes that any attorney-at-law may issue subpoenas.State v. Morrill, 197 Conn. 507, 513-14, 498 A.2d 76 (1985). The second sentence of General Statutes § 4-104 explicitly provides: "If any . . . hospital . . . is served with a subpoena issued by competent authority directing the production of such hospital record in connection with any proceedings in any court, CT Page 9817 the hospital . . . may . . . deliver such record or . . . copy thereof to the clerk of such court." (Emphasis added.) The term "competent authority" has been defined as "a commissioner of the Superior Court. . . ." See Tolly v. Department of HumanResources, 225 Conn. 13, 19, 621 A.2d 719 (1993). A "commissioner of the Superior Court" is any attorney-at-law admitted to practice within Connecticut. General Statutes §51-85. Therefore, similarly to our Supreme Court in State v.Morrill, supra, 513-14, this court finds that the state's attorney, just as any other licensed attorney, can lawfully subpoena medical records under General Statutes § 4-104.
Contrary to the interpretation of § 52-146o urged by Molitor, "[a] statute does not become ambiguous because the parties argue its meaning differently. . . . The legislative intent is to be found, not in what the legislature intended to say, but in the meaning of what it did say. . . . We must construe a statute without reference to whether we feel that it might be improved by adding to it or interpreting it differently. . . . It is our duty to apply the law not to make it." (Citations omitted.)State v. Gordon, supra, 45 Conn. App. 498. Neither General Statutes §§ 52-146o nor 4-104 prohibit the state's subpoena of Molitor's medical records. Accordingly, this court finds that Molitor's contention that the subpoena is unlawful is without merit.
IV. In Camera Review
Molitor, for reasons unknown to this court, argues that an in camera review of her medical records would be inappropriate. In yet another attempt to mix apples with oranges, she cites the case of Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923,135 L.Ed.2d 337 (1996), for the proposition that the privilege that pertains to her records is absolute.
Jaffee involved a psychotherapist-patient privilege. It is the court's understanding that the state is not seeking psychotherapeutic records from Molitor; rather, the state is seeking medical records of her treatment at Stamford Hospital. The fallacy of Molitor's argument can be found in the reasoning of Jaffee where the United States Supreme Court stated: "Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends CT Page 9818 upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." Jaffee v. Redmond, supra, 15.
As recognized by the United States Supreme Court, medical treatment varies drastically from the realm of objective diagnostic analysis to complex, subjective, and intensely personal revelations. Treatment for lacerations or fractures does not demand confidentiality because it does not reveal anything of a truly personal nature. Treatment for a mental illness, however, implicates the deepest reaches of the human psyche, a part of each individual that others cannot readily examine. Access to this truly personal and private part of each individual is usually acquired through a relationship that is predicated on trust. Disclosure of physical sufferings would be less traumatic than disclosure of one's mental difficulties; disclosure of the former may occur in being seen by others in public, while disclosure of the latter can only occur by having another person destroy your trust and invite others into your personal realm. See Jaffee v. Redmond, supra, 15-18.
Furthermore, recognition of a psychotherapist-patient privilege promotes appropriate treatment of mental illness, "a public good of transcendental importance." Id., 18. The likely evidentiary benefit that would result from allowing disclosure of mental health records for litigation purposes is minimal, and therefore, is outweighed by the private interest in keeping the records confidential. Id. Medical records pertaining to physical ailments, however, are different in scope because release of these records does not inhibit appropriate medical care. The evidentiary significance of medical records detailing objective symptoms and treatment outweighs the private interest in confidentiality in cases such as the one presently before this court. See id.
Finally, this court also finds it useful to point out that Molitor's records are not presently within the public realm; rather, as per § 4-104, they are being held under seal in the clerk's office. The court, and the court alone, upon a sufficient showing by the party requesting an in camera review, is entitled to examine these records to determine if anything of a private nature exists and should be protected. This procedure is far more appropriate than an overbroad exclusion of the entire record. In light of the fact that there is no privilege which protects Molitor's records, the court can determine the relevancy of the CT Page 9819 records, like any other piece of evidence, and admit only those portions which are material to the prosecution of Kelly. Accordingly this court does not find any impropriety in conducting a confidential in camera review of her records. SeeState v. Howard, 221 Conn. 447, 460, 604 A.2d 1294 (1992).
For the reasons set forth above, the motion to quash is denied. So Ordered.
Comerford, J.