IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CRIME VICTIMS R.S. and S.E., *Petitioners*,

*v.*

THE HONORABLE PETER A. THOMPSON, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

TEDDY CARL VANDERS, *Real Party in Interest*.

No. 1 CA-SA 19-0080
FILED 11-21-2019

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2017-132367-001
The Honorable Peter A. Thompson, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Jamie Balson Attorney at Law, Sun City
By Jamie Balson
*Counsel for Petitioners*

Maricopa County Office of the Legal Advocate, Phoenix
By Elyse Anne Fune, James P. Leonard
*Counsel for Real Party in Interest*

_____

**OPINION**

Chief Judge Peter B. Swann delivered the opinion of the court, in which Presiding Judge James B. Morse Jr. and Judge Kenton D. Jones joined.

_____

**S W A N N**, Chief Judge:

**¶1**	In this case, we hold that the physician-patient privilege does not yield to the request of a criminal defendant for information merely because that information may be helpful to his defense.

**¶2**	Teddy Carl Vanders is charged with second-degree murder. On his request, the superior court ordered a hospital to disclose the deceased victim's privileged mental health records for an in camera review. Siblings of the victim petition for special action relief from that order.

**¶3**	Vanders's argument is that his constitutional rights overcome a statutory privilege. While it is true that the privilege cannot withstand a direct conflict with a constitutional right, a defendant's due process right to a fair trial does not create a right to discovery any greater than those rights created by Ariz. R. Crim. P. ("Rule") 15.1 and *Brady v. Maryland*, 373 U.S. 83 (1963). We hold that to be entitled to an in camera review of privileged records as a matter of due process, the defendant must establish a substantial probability that the protected records contain information critical to an element of the charge or defense or that their unavailability would result in a fundamentally unfair trial. Because Vanders did not establish such a probability, the court erred by granting an in camera review of the victim's privileged records. We therefore accept jurisdiction and grant relief.

**FACTS AND PROCEDURAL HISTORY**

**¶4**	On July 13, 2017, Vanders called 9-1-1 and told the operator that he had just shot and killed his long-term girlfriend, M.S., during a domestic dispute. He described the incident to the operator, saying "[M.S.] was acting evil and possessive. She was crawling around. It was insane and not normal." He also said that M.S. had abused him throughout their relationship, and that he had "been threatened for many years." He told the operator that M.S. had been to a mental hospital and that he thought she had been diagnosed with a mental illness.

**¶5** Before trial, Vanders requested that the court compel "Magellan Hospital/Urgent Psychiatric Care Center" to disclose for an in camera review M.S.'s privileged mental health records from a visit six years before her death. Vanders claimed that "the nature of the requested records are essential to his listed [justification] defenses and to his ability to effectively examine witnesses." In support of his motion, Vanders cited his statements to the 9-1-1 operator and two police reports from 2009 and 2011, both of which listed him as the victim of domestic assault. In the 2009 incident, M.S. was taken into custody after she admitted to hitting Vanders while both were intoxicated. In the 2011 incident, while the couple were intoxicated, M.S. broke open the couple's gun safe to get a gun to kill herself, and Vanders physically restrained her. According to the report, M.S. was "hysterical and kept saying she wanted to kill herself," and, once in custody, asked for an officer's gun so she could kill herself. The police took her to Magellan Hospital "due to [her] current mental state," where she voluntarily checked herself in and told staff that "she did need help and wanted to talk to them about suicide."

**¶6** Relying on *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232 (App. 1992), the superior court found that Vanders's due process rights required disclosure of M.S.'s privileged records for an in camera review. The court granted Vanders's motion, and M.S.'s siblings, as victims under Arizona's Victims' Bill of Rights ("VBR"), brought this special action challenging the ruling. *See* A.R.S. §§ 13-4401(19), -4437(A).

## JURISDICTION

**¶7** Special action jurisdiction is appropriate when there is no equally plain, speedy, and adequate remedy by appeal, Ariz. R.P. Spec. Act. 1(a), and when the case presents a purely legal issue of statewide importance and first impression, *Gilbert Prosecutor's Office v. Foster*, 245 Ariz. 15, 17, ¶ 5 (App. 2018). We accept jurisdiction because there is no adequate remedy by appeal when a party challenges an order to produce privileged documents, *see Roman Catholic Diocese of Phx. v. Superior Court (State)*, 204 Ariz. 225, 227, ¶ 2 (App. 2003), and this case presents a legal question of statewide importance that will arise again, *cf. Duquette v. Superior Court (Lamberty)*, 161 Ariz. 269, 271 (App. 1989).

## DISCUSSION

**¶8** The petitioners argue that the superior court erred by granting Vanders's request for an in camera review of M.S.'s medical records because the records are protected under the VBR and the physician-

patient privilege, and because Vanders failed to establish a superseding constitutional right to the protected records. Generally, we will not disturb the superior court's ruling on a discovery matter absent an abuse of discretion. *State v. Fields*, 196 Ariz. 580, 582, ¶ 4 (App. 1999). But we review the legal principles on which the court bases its discovery ruling, including whether a privilege applies, de novo. *State v. Zeitner*, 246 Ariz. 161, 164, ¶ 8 (2019). Because we can resolve this special action based on the statutory privilege, we need not reach the court's ruling regarding the VBR. *See Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 505, ¶ 11 (App. 1999) ("It is sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds dispositive of the case.").

I.      VANDERS'S DISCOVERY RIGHT DOES NOT OVERCOME THE
        PHYSICIAN-PATIENT PRIVILEGE.

**¶9**          It is well-established that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see Brady*, 373 U.S. 83; *State v. Connor*, 215 Ariz. 553, 561–62, ¶ 21 (App. 2007). In *Brady*, the Supreme Court held that the government's failure to disclose evidence in its possession that was both favorable to the defendant and material to guilt or punishment violated the defendant's due process rights. 373 U.S. at 87; *see United States v. Bagley*, 473 U.S. 667, 682 (1985) ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). Even considering the right established in *Brady*, "[t]he federal constitution gives the defense no greater right to discovery than exists under state law." *Roper*, 172 Ariz. at 236 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987)).

**¶10**         We first examine whether Vanders's state right to discovery entitles him to access M.S.'s privileged records. In Arizona, a criminal defendant's right to disclosure is governed by Rule 15.1, which provides, along with other discovery rights, that when a defendant claims a need for material or information, the court may order "any person" to produce that material or information if the court finds "(A) the defendant has a substantial need for the material or information to prepare the defendant's case; and (B) the defendant cannot obtain the substantial equivalent by other means without undue hardship." Rule 15.1(g). On the other hand, a person's medical records are protected from disclosure in a criminal case by A.R.S. § 13-4062(4), which prohibits the examination of "[a] physician or surgeon, without consent of the physician's or surgeon's patient, as to any information acquired in attending the patient which was necessary to

enable the physician or surgeon to prescribe or act for the patient."[1]  This statute, though framed as a testimonial privilege, also protects against disclosure of privileged medical records. *Zeitner*, 246 Ariz. at 166, ¶ 18.  The privilege continues after the patient's death. *Sun Health Corp. v. Myers*, 205 Ariz. 315, 319, ¶ 11 (App. 2003).

**¶11**         The physician-patient privilege is not absolute, but its exceptions generally are limited to those circumstances in which the legislature determined that society's interests in disclosure outweigh a patient's interest in privacy. *See, e.g.*, A.R.S. § 46-453(A) (exempting the privilege in cases involving "a vulnerable adult's exploitation, abuse or neglect"); A.R.S. § 13-3806 (requiring physicians to report wounds that may have resulted from illegal activity); *but see Benton v. Superior Court (State)*, 182 Ariz. 466, 469 (App. 1994) (suggesting that the judiciary also has limited the privilege, but focusing on cases holding that there was no valid privilege — not creating exceptions to a validly held privilege).   The privilege-holder may enforce the privilege, but may also waive it. *See Bain v. Superior Court (Mills)*, 148 Ariz. 331, 334 (1986).  Notably, there is no exception for court-ordered disclosure stemming from a defendant's pretrial discovery requests or his constitutional right to present evidence. *Cf.* N.C. Gen. Stat. § 8-53 (North Carolina statute allowing disclosure of physician-patient privileged records if a court determines it is "necessary to a proper administration of justice").

**¶12**         When the defendant's rule-based right to demand documents conflicts with a person's statutory physician-patient privilege, the privilege must prevail. *See State v. Hansen*, 215 Ariz. 287, 289, ¶¶ 7–8 (2007) (holding that if the court is unable to harmonize an apparently conflicting statute and rule, it must determine whether the matter regulated is procedural or substantive, and if substantive, then the statute prevails).  Such is the case here: both Rule 15.1(g) and A.R.S. § 13-4062(4) provide substantive rights, and § 13-4062(4) prevails when the two conflict.

---

[1]      The petitioners argue that the records are protected by A.R.S. § 13-4062(4) (physician-patient privilege) and § 32-2085(A) (psychologist-patient privilege).  The record in this case does not indicate whether the requested records were the product of a physician-patient relationship, a psychologist-patient relationship, or both.  Because § 13-4062(4) and § 32-2085(A) apply the same protections, the ambiguity in the record does not affect our analysis. *See Cabanas v. Pineda*, 246 Ariz. 12, 17, ¶ 18 (App. 2018).

II.   WE DO NOT EMBRACE *ROPER*'S BROAD EXTENSION OF A DEFENDANT'S RIGHT TO PRESENT A COMPLETE DEFENSE.

¶13        Citing *Roper*, Vanders suggests that the due process right to present a complete defense transforms discovery into a constitutional right, which would overcome the statutory privilege.

¶14        Due process requires that a defendant receive a fundamentally fair trial, including "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Oshrin v. Coulter*, 142 Ariz. 109, 111 (1984). In *Roper*, this court extended that right to entitle the defendant to an in camera review, and potentially full disclosure, of the victim's physician-patient privileged records, even when those records were not in the possession of the state. *Roper*, 172 Ariz. at 239.

¶15        The facts in *Roper* were unique and, importantly, the court did not know when it ruled whether the privileged records were in the state's possession. The defendant in that case had stabbed her husband, who allegedly suffered from a multiple-personality disorder and was manifesting one of his violent personalities at the time of the offense. *Id.* at 237. The defendant alleged that she acted in self-defense, and asserted that she knew her husband suffered from multiple personalities and that she had joined him in at least some counseling sessions for treatment of the disorder. *Id.* at 235, 237. Before trial, the defendant requested disclosure of her husband's medical records. *Id.* at 234. The superior court granted the request and ordered an in camera review of the records based on its finding that the defendant showed that the records were "important" and that the privilege had been partially waived. *Id.* at 234–35.

¶16        On appeal, this court held that when a defendant's due process right to a fair trial directly conflicts with the physician-patient privilege or the VBR, then due process is the superior right. *Id.* at 239. Although the court acknowledged that a defendant has no constitutional right to discovery, it nevertheless held that certain due process rights—like the right to a complete defense and effective cross-examination—could extend to pretrial proceedings and require disclosure of information in preparation for trial. *Id.* at 236, 240–41. Based on the facts of the case, the court concluded that the defendant's due process rights did require pretrial discovery, and because the physician-patient privilege limits discovery, the court found that the privilege directly conflicted with the defendant's due process right. *Id.* at 237–38, 240–41. The court further suggested that the Sixth Amendment rights to confrontation and compulsory process may also

entitle the defendant to access the privileged records in order to effectively confront the witnesses against her. *Id.* at 240.

¶17　　　This court instructed the superior court to examine the records in camera and order disclosure of those records that were "essential to presentation of the defense of self-defense" or "essential to the determination of the ability of the victim to perceive, recall, and/or accurately relate the events of the day in question." *Id.* at 235. The court did not discuss what standard the superior court should have applied to determine whether the defendant was entitled to an in camera review in the first place.

¶18　　　*Roper* largely based its holding on cases involving privileged materials *already in the state's possession* (and therefore subject to *Brady*), or on cases concerning a defendant's Sixth Amendment trial-based confrontation rights. For example, the court cited *United States v. Agurs*, 427 U.S. 97 (1976), and *McDowell v. Dixon*, 858 F.2d 945 (4th Cir. 1988)—both involving information known to the government—for the proposition that "a defendant's due process rights were generally recognized to be violated if the victim possessed exculpatory information that was not disclosed to the defendant." *Roper*, 172 Ariz. at 238. And the court cited *Michigan v. Lucas*, 500 U.S. 145 (1991), and *Davis v. Alaska*, 415 U.S. 308 (1974)—both analyzing, under a Sixth Amendment framework, a trial court's erroneous exclusion of protected records relevant to impeachment—for the broad proposition that "state laws providing for nondisclosure of information to defendants must, in some situations, yield to the constitutional confrontation rights of the accused." *Roper*, 172 Ariz. at 240. These Confrontation-Clause-based cases did not concern court-ordered disclosure of privileged records by third parties, but instead addressed whether the defendant could *use* protected information, to which the defendant already had access, for impeachment. *Lucas*, 500 U.S. at 147–48, 152–53; *Davis*, 415 U.S. at 318–20; *see also Ritchie*, 480 U.S. at 52 (explaining that the effect of interpreting the Confrontation Clause to require *pretrial* access to information "would be to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery").

¶19　　　No decision binding on this court has held that a defendant's due process right to a fair trial evolves into a general constitutional right to discovery, which could then work to overcome an individual's physician-patient privilege. And those cases that have allowed invasion of the privilege are distinguishable. One line of cases, which generally relies on *Davis*, requires juvenile records to be disclosed to the defendant so the defendant can impeach adverse witnesses. *See, e.g., State v. Morales*, 129

Ariz. 283, 285–86 (1981) (holding that, based on the defendant's showing of the content within a protected record, the statute protecting confidentiality of juvenile records maintained by the department of corrections was defeated by the defendant's constitutional right to effective cross-examination); *State v. Rodriguez*, 126 Ariz. 28, 30–31 (1980) (finding an exception to the confidentiality of juvenile case dispositions under Ariz. R. Evid. 609(d)); *State v. Myers*, 117 Ariz. 79, 88 (1977) (weighing the state's policy of protecting juvenile offenders against a defendant's right to confront witnesses). But these cases focus on a witness's juvenile records held by the department of corrections, not a person's physician-patient privileged records held by a private entity. The interests involved in protecting juvenile records and physician-patient records are distinct.

¶20 Another line of cases has required disclosure of physician-patient privileged records where there is an exception to the privilege. *See Ritchie*, 480 U.S. at 43–44, 57–58 (noting a Pennsylvania statutory exception allowing disclosure of privileged documents to a "court of competent jurisdiction pursuant to court order"); *Zeitner*, 246 Ariz. at 163, ¶ 1 (finding a valid *statutory* exception to A.R.S. § 13-4062(4) for investigations into AHCCCS fraud); *but see Benton*, 182 Ariz. 466 (granting prosecution the right to secure a victim's records after the victim refused to cooperate with the prosecution), *cited favorably by Zeitner*, 246 Ariz. at 166–67, ¶¶ 21, 24. Because we are unable to find a legal basis for *Roper*'s broad proposition that a defendant's right to a fair trial creates a constitutional right to pretrial discovery, we cannot embrace that decision as a basis for overriding the physician-patient privilege in the circumstances of this case.

¶21 We agree with *Roper* that when a defendant's established due process right directly conflicts with a non-federal constitutional right, the due process right must prevail. *See* 172 Ariz. at 236; *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (holding a defendant's right to present "trustworthy" and "critical" evidence outweighed state's interest in adhering to hearsay rules). The physician-patient privilege often will directly conflict with the defendant's ability to perfect his trial presentation, but only in the exceptional case will it directly conflict with a defendant's fundamental right to a fair trial such that the privilege must yield to due process. Indeed, the privilege is designed to withstand even a party's demonstrated need for the information it protects — if mere relevance were enough to defeat the privilege, it would provide no meaningful protection at all. *See Jaffee v. Redmond*, 518 U.S. 1, 18 (1996) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." (citation omitted)); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("[T]he

Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

**¶22** Accordingly, we reiterate that a defendant does not have a general constitutional right to discovery from a third party, and we depart from *Roper* to the extent it implies that such a right exists. We also recognize, however, that the physician-patient privilege is not entirely impenetrable because in the exceptional case, the privilege could be applied to violate a defendant's due process right to present a defense. *See Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998); *see also Trombetta*, 467 U.S. at 485; Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges* §§ 11.1, 11.3 (3d ed. 2019) (noting that even purportedly absolute privileges must occasionally yield to a defendant's showing of truly compelling need).

III. A DEFENDANT MUST MAKE A SHOWING OF PREJUDICE BEFORE HE IS ENTITLED TO AN IN CAMERA REVIEW OF PRIVILEGED RECORDS.

**¶23** In *State v. Connor*, this court deduced that *Roper* authorized infringement of the physician-patient privilege for in camera review "in the context of a *reasonable possibility* that the information sought by the defendant included information to which she was entitled as a matter of due process." 215 Ariz. at 558, ¶ 10 (emphasis added). Despite the relatively permissive language of this standard for in camera review, defendants have not been successful in challenging the privilege. *See, e.g.*, *State v. Kellywood*, 246 Ariz. 45, 48–49, ¶¶ 9–15 (App. 2018) (holding that the defendant did not make a specific enough showing that the victim's communications with her counselor, during the time frame that the crime was committed, contained exculpatory information); *State v. Sarullo*, 219 Ariz. 431, 436–37, ¶¶ 19–21 (App. 2008) (affirming the superior court's denial of the defendant's request for the victim's privileged records because "nothing in the record" supported the defendant's assertion that the victim's mental health issues caused her to fabricate the assault); *Connor*, 215 Ariz. at 558–59, ¶¶ 11, 13 (affirming superior court's denial of defendant's request for an in camera review, finding that defendant's broadly worded request for the victim's mental health records "presented no sufficiently specific basis" for infringing on privilege, and that certain requested information would be inadmissible under Rules of Evidence). In practice, courts arguably have applied a stricter standard than that of a "reasonable possibility." *See Kellywood*, 246 Ariz. at 52, ¶¶ 30–33 (Eckerstrom, J., dissenting) (citing applications of the standard and arguing

that the majority applied the standard more stringently than its language requires). Yet *Connor*'s extraction of the "reasonable possibility" standard from *Roper* was a result of *Roper*'s overbroad view of a defendant's constitutional right to discover privileged records, and therefore stands on shaky ground.

¶24 An in camera review is inherently less intrusive than outright disclosure, but it is nevertheless an intrusion and an encroachment on the rights guaranteed by A.R.S. § 13-4062(4). We hold that the "reasonable possibility" standard for in camera review is inadequate. Instead, a defendant is entitled to an in camera review of physician-patient privileged records not subject to *Brady* when the defendant demonstrates (1) a substantial probability that the protected records contain information that is trustworthy and critical to an element of the charge or defense, or (2) that their unavailability would result in a fundamentally unfair trial. *See Chambers*, 410 U.S. at 302 (holding that due process required allowing the defendant to present hearsay testimony that "bore persuasive assurances of trustworthiness" and "was critical to [his] defense"); *Samiuddin v. Nothwehr*, 243 Ariz. 204, 211, ¶ 20 (2017) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)); *Connor*, 215 Ariz. at 561, ¶ 22 (requiring the defendant to demonstrate that his need for the privileged information "amount[s] to one of constitutional dimension").

¶25 While we cannot expect a defendant to know the exact contents of the privileged records he has not yet seen, this standard does require that the defendant demonstrate a document-specific basis for invading the privilege. *See Connor*, 215 Ariz. at 558, ¶ 11. Because a defendant does not have an established constitutional right to discovery, the court must start with a strong presumption that the privilege prevents access to the information it protects.

IV.   VANDERS FAILED TO ESTABLISH A SUBSTANTIAL PROBABILITY THAT HE IS ENTITLED TO THE PRIVILEGED DOCUMENTS AS A MATTER OF DUE PROCESS.

¶26 Vanders argues that A.R.S. § 13-4062(4) is unconstitutionally applied to block access to information to which he is entitled as a matter of due process. There is no indication that M.S.'s privilege has been waived or that any express or implied legislative exception applies. To demonstrate a constitutional entitlement to information and therefore qualify for an in camera review, Vanders must demonstrate a substantial probability that the information sought is fundamental to an element of the state's charge

against him or his justification defense. He must further demonstrate that there is no alternative evidence, and that he would therefore be prejudiced by the unavailability of the requested records.

¶27         Vanders argued to the superior court that M.S.'s mental health records "are essential to his listed defenses and to his ability to effectively examine witnesses." Vanders showed that M.S. had been the aggressor in at least two domestic disputes. On one of those occasions, in 2011, M.S. checked into a mental health facility to address suicidal tendencies after telling police and Vanders that she wanted to kill herself, and attempting to do so. Vanders also showed that he was the one to call 9-1-1 after he shot M.S., and that he made several statements to the 9-1-1 operator consistent with his story that he acted in self-defense. For example, he said that M.S. had abused him throughout their long-term relationship and that she had been acting "insane" that night. These are important facts, but Vanders already has possession of the evidence he needs to present them.

¶28         Vanders has made no showing to suggest that M.S.'s hospital records from six years before her death would likely contain non-cumulative information to bolster his defense, and he does not articulate how diagnosis of a mental health condition from six years earlier would make his case or break the state's case. And because Vanders was not aware of any specific diagnosis at the time he shot M.S., he did not—and cannot—establish how such a diagnosis may have impacted his actions that day. Vanders already has access to similar reliable evidence via a recording of the 9-1-1 call and the police reports from the two earlier domestic violence incidents. The police narrative in the 2011 incident report, for instance, vividly describes M.S.'s aberrant behavior. While the hospital records may be helpful corroborating evidence, there is little in this record to show that excluding the deceased victim's medical records would deprive Vanders of the ability to refute an element of the state's charge or to establish an element of his justification defense.

**CONCLUSION**

**¶29** For the foregoing reasons, we accept jurisdiction and grant relief. M.S.'s mental health records are privileged, and Vanders has not established that upholding the privilege and denying his request for an in camera review of the records would violate his due process right to a fundamentally fair trial.



AMY M. WOOD • Clerk of the Court
FILED: AA