963 P.2d 287

**In re WILLIAM G.**

**No. 1 CA–JV 96–0202.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 23, 1997.

Review Denied Sept. 24, 1998.*

* Vice–Chief Justice Jones and Justice McGregor voted to grant the petition for review.

William J. Ekstrom, Jr., Mohave County Attorney by Ronald S. Gilleo, Deputy County Attorney, Kingman, for Appellee.

John C. Williams, Prescott, for Appellant.

## OPINION

SULT, Judge.

William G. ("the juvenile") appeals an adjudication of delinquency and resulting disposition arising from a charge of criminal damage. For the following reasons, we reverse the finding of delinquency.

## BACKGROUND

In January 1996, the fifteen-year-old juvenile went shopping with his mother and two of his friends at the K–Mart shopping center in Lake Havasu. The juvenile bought shoes with his mother and then joined his friends outside in the parking lot, where the three began playing with shopping carts. The parking lot was described as busy. It was also sloped, higher at the K–Mart end and slanting downward from there. While putting his cart away, the juvenile struck a parked car in the lot.

The only eyewitness to the incident, Diane Samons, was sitting in her truck in the parking lot waiting for her companions to return. She observed the three boys with grocery carts "goofing off" in the parking lot. She testified:

Q., When you say goofing off, what are you describing?

A. Just probably biding their time, riding on them, flipping them up, having fun on carts.

Q. When you say flipping them up, were the wheels coming off the ground?

A. Oh, yeah, definitely.

Q. Two wheels?

A. Sometimes two wheels, sometimes all the wheels. They did very good jobs. I was watching them.

. . . .

Q. How fast were they going?

A. I wouldn't say that they were going real, real fast. Just probably picking up enough momentum to do what they were doing. I don't know.

The incident in question was described by Ms. Samons:

Q. And why did they stop playing with them?

A. A middle aged woman . . . came out of one of the stores, kind of in the middle right in front of my truck, and said put the carts up, or put them up, let's go, and the other two boys were the first ones to just kind of, you know, get rid of their carts. . . . I'm not going to say that I saw them, where they put their carts or how they put their carts away. . . .

Q. What happened when the third boy tried to put his cart up?

A. Well, he was the last to put his cart up, and he was going to put his cart up, probably the closest—I am estimating here into what he might have been thinking—he was just going to, you know, ride it down and then kind of make that corner in front of my truck to pop it up on that little island there.

. . . .

Q. What happened when he came around the corner to try to park it?

A. He overestimated, and when he—he flipped it up a little too early. When he landed back down on it, he rammed it into the vehicle that I was talking about previously.

. . . .

Q. Okay. Is it also—was your impression watching [the juvenile] put up his cart, that he was intending to hit any other cars?

A. To the best of my knowledge, without writing a book on [the juvenile], I would imagine that, no, he would have to be a complete moronic idiot to want to try to hit a vehicle. I said I felt to the best of my knowledge that he was just going to get one last good ride in there and flip it up on the curb. That's—to the best of my knowledge, yes, that's what he was doing.

. . . .

Q. And did he say anything to you?

A. No. I think I spoke first, and I asked him, I said are you going to pay to get that fixed, are you going to pay for that.

Q. What was his response to you?

A. His response to me—he was a little shocked. I think he was—probably wasn't expecting that to happen, and he said something . . . it had something to do with don't you ever make mistakes, or it was an accident.

. . . .

We did not exchange harsh words. He really was not rude to me. He didn't cuss at me or call me any names. . . .

At that point, the juvenile's mother called to the juvenile that she was leaving and told him to get in the car. The juvenile then turned away from Ms. Samons and walked to his mother's car and they left the scene. Upset that the juvenile would simply walk away from the damage he had caused, Ms. Samons located the owner of the car who worked at a nearby store. The owner reported the incident to the authorities, who identified the juvenile and charged him with criminal damage, in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–1602 (Supp.1996). At the juvenile's adjudication hearing, on the evidence set forth above, the court found the juvenile was criminally reckless, stating:

I believe that popping wheelies or however you want to say it, but flipping shopping carts near parked cars in a parking lot when it's done by 15 and 16 year olds, is something that—this is a substantial and unjustifiable risk of causing damages to those parked vehicles, and that the juve-

nile simply ignored what he was aware of, and in fact when he did cause damages, just took off and didn't intend to accept the responsibility for his actions.

The court adjudicated the juvenile delinquent for criminal damage and placed him on probation for a period of one year. Special terms and conditions of the disposition included forty hours of community service and fifteen days in the Mohave County Juvenile Detention Center. The juvenile was also ordered to pay $716.58 in restitution. The juvenile timely appealed.

## ISSUE

A person commits criminal damage if he "recklessly" defaces or damages property of another person. A.R.S. § 13–1602(A)(1). The juvenile claims that the state presented insufficient evidence to prove the culpable mental state of recklessness.

## ANALYSIS

### I. Standard of Review

■ Our review in this matter is focused on determining "whether, reviewing the evidence in the light most favorable to the judgment, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Maricopa County Juvenile Action No. JT9065297*, 181 Ariz. 69, 82, 887 P.2d 599, 612 (App.1994). In this case, there was no conflicting evidence presented. Only one eyewitness to the incident testified, Ms. Samons, and we have set forth *in haec verba* the substance of her account of the events. Thus, our analysis is based on the same operative facts that were before the juvenile court.

■ Our function on this review, then, is as the trier of law. We determine as a matter of law whether the evidence required for a finding of criminal recklessness existed in sufficient quantity so that any rational trier of fact could so find beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 319, 99 S.Ct. 2781, 2787, 2789, 61 L.Ed.2d 560 (1979) (holding that due process requires evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense and the relevant question for the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have so found). While we defer to the trial court's findings of fact and draw all reasonable inferences therefrom in support of the trial court's conclusions, we determine *de novo* whether the trial court had before it the quantity of evidence necessary to render the finding it did.

### II. Recklessness

■ The culpable mental state of recklessness is applied either in connection with a result of an act or omission or in connection with enumerated circumstances, whichever may be encompassed in the particular criminal statute at issue. To conclude that an action was recklessly performed requires a showing:

> that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

A.R.S. § 13–105(9)(c) (Supp.1996).

■ As is apparent from this definition, reckless conduct is a species of unintentional conduct and thus shares elements in common with ordinary, or "civil" negligence. However, we think it evident from the terms describing the offending conduct, including "consciously disregards," "substantial" and "gross deviation," that the legislature did not intend via section 13–105(9)(c) to criminalize acts or omissions amounting to no more than civil negligence. *See* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.7, at 329–33 (1986); Rollin M. Perkins, *Criminal Law*, ch. 7, § 2 at 666 (1957) ("[A] very substantial deviation [from the standard of care] is essential to criminal guilt."). In construing the reach of this statutory definition, then, we must attempt to demarcate the border between criminal recklessness and civil negligence to determine whether the legislature intended to criminal-

ize this juvenile's conduct. To do so, we will compare and contrast principles of civil negligence with the corresponding concepts used by the legislature to define criminal recklessness, namely, awareness and conscious disregard of a substantial risk, which disregard constitutes a gross deviation from the applicable standard of conduct.[1]

## A. Awareness and Conscious Disregard of a Substantial Risk

 Mere inadvertence is sufficient to constitute civil negligence. W. Page Keeton et al., *Prosser and Keeton on Torts* § 31, at 169 (5th ed. 1984) ("In most instances, [negligence] is caused by heedlessness or inadvertence, by which the negligent party is unaware of the results which may follow from his act."). By contrast, recklessness requires that the person be aware of and consciously disregard the risk his conduct is creating. We recognize that absent a person's outright admission regarding his state of mind, his mental state must necessarily be ascertained by inference from all relevant surrounding circumstances.

 Here, since neither the juvenile nor his companions testified, the relevant circumstances included only the juvenile's conduct and Ms. Samons' testimonial assessment of the juvenile's mind-set. That assessment immediately following the collision was that he "was a little shocked," and "probably wasn't expecting that to happen." At most, this testimony would support an inference of the kind of inadvertence or simple inattention sufficient for civil negligence. However, recklessness requires that the person actually be "aware" of the risk being created by his conduct. Ms. Samons' testimony will not support an inference of such actual awareness.

 Thus, the only justification for the juvenile court's finding that "the juvenile simply ignored what he was aware of" must come from the juvenile's conduct. Under the statute, that conduct must have created a "substantial" risk of, in this case, damage to property. Only conduct which created this high degree of risk would support the inference that the juvenile was aware that he was creating such a risk. *Cf. State v. Jansing,* 186 Ariz. 63, 68–69, 918 P.2d 1081, 1086–87 (App.1996) (holding that a person who drank the equivalent of ten beers, operated a vehicle at night, deliberately failed to stop at a stop sign, and killed another driver, was aware of and consciously disregarded the risk that such conduct would cause death). We must therefore analyze the term substantial to determine whether the juvenile's conduct created that degree of risk, thus providing support for the juvenile court's inference.

 We again distinguish between conduct sufficient for civil negligence and conduct carrying criminal consequences. Culpability for civil negligence may be shown when a person's conduct creates merely an "unreasonable" risk of some harm. *See generally Prosser and Keeton on Torts* §§ 30–33. Recklessness, on the other hand, contemplates conduct creating a substantial risk of harm. What constitutes a substantial risk? No ready reference answers this question but some guidance can be found in a prior Arizona decision that draws distinctions between types of negligence.

In *Williams v. Wise,* 106 Ariz. 335, 476 P.2d 145 (1970), the supreme court equated gross and wanton negligence, a civil negligence concept, with criminal or quasi-criminal conduct. *Id.* at 341, 476 P.2d at 151 (citing *Alabam Freight Lines v. Phoenix Bakery,* 64 Ariz. 101, 110–11, 166 P.2d 816, 821 (1946)). In distinguishing simple negligence from this quasi-criminal type of negligence, the *Williams* court concentrated on the degree of risk which would raise simple negligence to the level of gross and wanton

---

1. The negligence concepts we use in our analysis are those derived from tort law, not those statutorily included in the species of culpability known as "criminal negligence." A.R.S. § 13–105(9)(d) (Supp.1997). Statutory criminal negligence is closely related to criminal recklessness, and also requires a "substantial" risk and a "gross" deviation from applicable norms. The difference between them is that criminal negligence requires only a failure to perceive a risk, as compared to the recklessness requirement of an awareness and conscious disregard of the risk. Criminal negligence as statutorily defined in Arizona *does not equate to civil negligence. See* Perkins, *supra;* LaFave and Scott, *supra.*

negligence. *Williams* relied on the *Restatement (Second) of Torts* § 500, comment g (1965), dealing with "reckless misconduct," which conduct the court identified as the same type which Arizona denominated gross and wanton. The court quoted from the *Restatement* as follows:

> The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

106 Ariz. at 341, 476 P.2d at 151; *see also Commonwealth v. Ruddock*, 25 Mass.App.Ct. 508, 520 N.E.2d 501, 504 (1988) (holding that in the context of establishing criminal liability, "[t]he words 'wanton' and 'reckless' . . . express a difference in the degree of risk . . . so marked, as compared with negligence, as to amount substantially and in the eyes of the law to a difference in kind." (Quoting *Commonwealth v. Welansky*, 316 Mass. 383, 55 N.E.2d 902, 910–11 (1944))).

■ We conclude that defining a substantial risk as one "different in kind" from the merely unreasonable risk sufficient for civil negligence best serves the purpose of circumscribing recklessness in such a manner that a fact-finder will not be misled into criminalizing conduct which is only civilly negligent. We also conclude that, in this case, reasonable minds could not differ that the juvenile's conduct did not create a risk different in kind from the risk associated with many types of misbehavior which create no more than an unreasonable risk of harm.

This was not a case of teenagers engaging in an inherently dangerous activity or using an inherently dangerous instrumentality. Rather, this fifteen year old and his friends were "goofing off" with shopping carts, not going fast, "[j]ust picking up enough momentum to do what they were doing." Moreover, "[t]hey did very good jobs" in riding the carts, indicating a proficiency which minimized the risk of harm. Two of the three concluded the activity without incident, and it was not until his last ride that this juvenile caused damage with his cart. We would concur that the juvenile's activity created an unreasonable risk of damage to cars parked in the lot. Nevertheless, to constitute reckless criminal behavior, conduct must create a risk that is not only unreasonable but also substantial. That is not the case here and no rational trier of fact could have so found. *A fortiori*, no rational trier of fact could have found an awareness and conscious disregard of such a risk by the juvenile.

**B. Gross Deviation From the Applicable Standard of Conduct**

■ Recklessness requires that the conduct in question, in addition to creating a substantial risk of harm, also constitute a "gross" deviation from the standard of conduct of a reasonable person. An initial question is how this hypothetical reasonable person is to be defined. If the conduct under consideration is that of a juvenile, should he be held to the standard of conduct of an adult or to that of juveniles of like age, intelligence and maturity? In the law of civil negligence in Arizona, the latter standard is applied. *First Nat'l Bank v. Dupree*, 136 Ariz. 296, 298, 665 P.2d 1018, 1020 (App.1983). This is generally true throughout the country, absent special circumstances such as operation of an automobile, hunting, use of an inherently dangerous instrument or participation in an inherently dangerous activity. *See* 43 C.J.S. *Infants* § 193 (1978).

■ We conclude that in the circumstances of this case, or cases closely analogous, the civil rule is what the legislature intended to incorporate by its reference to a standard of conduct. We reserve judgment on any future case that concerns significantly different activity by juveniles. We hold only that riding a shopping cart in a parking lot when done by a fifteen year old is an activity that must be judged by the standard of fifteen year olds of like age, intelligence and experience.

■ With a standard of conduct to work from, the final inquiry is whether the conduct of this juvenile was a "gross" deviation from that standard. Since the legislature has not provided a definition of this term, we attempt to ascertain and apply the ordinary meaning of the term. *State v. Johnson*, 171 Ariz. 39,

41, 827 P.2d 1134, 1136 (App.1992). One authority offers this relevant definition of gross: "flagrant and extreme." *Random House Unabridged Dictionary* 842 (2d ed.1993). Synonyms include: "outrageous, heinous, grievous." *Id.*

██ While this etymological reference is not clearly definitive, it does season the term "gross" with sufficient semantic flavor to cause us to conclude that the deviation from acceptable behavior required for recklessness must be markedly greater than the mere inadvertence or heedlessness sufficient for civil negligence. We do not doubt that the juvenile's conduct in this case was a sufficient deviation from the standard of conduct applicable to fifteen year olds to constitute civil negligence. Where reasonable minds could not differ is that the deviation was not a flagrant, extreme, outrageous, heinous or grievous deviation from that standard. In short, the deviation was not gross.[2]

In summary, we conclude that the evidence in this case is wholly inadequate to support a finding of recklessness. The dissent, however, concludes that we should defer to the juvenile court's finding to the contrary. We acknowledge that we must defer to the factfinder at the trial level where there is conflicting evidence or where differing inferences can be drawn from the evidence. However, our analysis is based on the same set of operative facts as were before the juvenile court, and neither those facts nor any inferences to be drawn from those facts support the juvenile court's findings. Thus, our conclusion that the evidence is inadequate to meet the applicable statutory definitions is a determination of law. Drawing such a conclusion is an integral part of our review process, designed to guard against an adjudication that is constitutionally infirm, and we have performed it as required. *See*

*Thompson v. Louisville*, 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960) (holding that a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm).

## CONCLUSION

The evidence was insufficient to show that the juvenile possessed the culpable mental state of recklessness required for an adjudication of criminal damage. We therefore reverse the juvenile's adjudication.

KLEINSCHMIDT, Judge, concurs.

GERBER, Presiding Judge, dissenting.

The majority's decision, which will be good news in teenage circles but not in shopping centers, errs in two respects, for which I respectfully dissent from my colleagues.

As the majority observes, the trial court implicitly made a finding that the conduct in question was "substantial" and constituted a "gross" deviation from the standard of care. Given our duty to defer to the trial court on such findings, I would accept that implied finding here.

This analysis leads to a factual observation. The question properly before us is whether this defendant was aware of and disregarded the substantial risk of damaging property with his shopping cart. On the facts, this defendant *had* to be aware of the risk of damaging vehicles in the parking lot. Cars were parked close ("nearby") to where he was riding his unsteerable cart, and the parking lot was sloped and "busy," as the majority observes, and the defendant had been told by his mother to stop his conduct. These facts indicate to me that the defendant was necessarily aware of and disregarded the

---

2. Our supreme court's jurisprudence in the area of punitive damages for tort also provides some guidance in determining the type of behavior that is within the reach of section 13–105(9)(c). Punitive damages are designed to punish and deter, a purpose shared by the criminal law. *Gurule v. Illinois Mut. Life and Casualty Co.*, 152 Ariz. 600, 601, 734 P.2d 85, 86 (1987). To obtain punitive damages, a plaintiff must prove that a defendant's wrongful conduct was guided by evil motives; that is, a "plaintiff must prove that defen-

dant's evil hand was guided by an evil mind." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986). Such a showing can be made by proof that the defendant was criminally reckless as defined by section 13–105(9)(c). *Id.* We do not believe that in a civil action based on the evidence in this case, any fact-finder would find on the evidence presented here that the juvenile's conduct evidenced an "evil hand" being guided by an "evil mind."

risk of colliding with nearby vehicles with his shopping cart, which is exactly what he did in the not-insubstantial amount of over $700. I have no hesitation in finding him possessed of the mental state of recklessness and guilty of the offense of reckless criminal damage. For these reasons I dissent from my colleagues' position.