IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

NOV 30 2005

COURT OF APPEALS
DIVISION TWO

|                          |   |                      |
|--------------------------|---|----------------------|
| THE STATE OF ARIZONA,    | ) |                      |
|                          | ) | 2 CA-CR 2004-0329    |
| Appellee,                | ) | DEPARTMENT B         |
|                          | ) |                      |
| v.                       | ) | O P I N I O N        |
|                          | ) |                      |
| DEAN JOHNATHAN MILES,    | ) |                      |
|                          | ) |                      |
| Appellant.               | ) |                      |
|                          | ) |                      |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20032036

Honorable Christopher C. Browning, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Eric J. Olsson                                    Tucson
                                                          Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Stephan J. McCaffery                                                  Tucson
                                                         Attorneys for Appellant

P E L A N D E R, Chief Judge.

¶1         After a jury trial, appellant Robert Johnathan Miles was convicted of

aggravated assault with a dangerous instrument, endangerment with a substantial risk of

imminent death, and criminal damage in the amount of $10,000 or more. The trial court imposed concurrent, presumptive prison terms, the longest of which was 7.5 years on the aggravated assault conviction. Among the three issues raised on appeal, Miles argues that the trial court violated the physician-patient privilege by admitting certain medical evidence and that the evidence was insufficient to support a finding of criminal recklessness. We disagree and, finding no reversible error, affirm.

**BACKGROUND**

¶2 We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts. *See State v. Riley*, 196 Ariz. 40, ¶ 2, 992 P.2d 1135, 1137 (App. 1999). On July 20, 2002, Miles was driving a pickup truck west on Drexel Road in Tucson when he failed to stop at a stop sign at Country Club Road. The front of Miles's vehicle collided with the passenger side of a 17,000-pound tanker truck in the middle of the intersection. The tanker truck was knocked onto its driver's side, the driver was injured, and the truck was destroyed. Miles's vehicle also was destroyed, and a passenger who had been riding with him sustained significant injuries that required four days of hospitalization.

¶3 Miles was tried on two counts of aggravated driving while under the influence of an intoxicant (DUI), aggravated assault against his passenger, endangerment of the tanker truck driver, and criminal damage based on the destruction of the tanker truck. During trial, the trial court granted Miles's motion for a judgment of acquittal on the DUI charges

2

pursuant to Rule 20, Ariz. R. Crim. P., 17 A.R.S., finding "the evidence [presented was] not sufficient to conclude beyond a reasonable doubt that the defendant was impaired." The jury found Miles guilty on the remaining counts. The aggravated assault and endangerment convictions were for dangerous-nature offenses because the jury also found that Miles had used a "dangerous instrument" (his vehicle) and had caused "serious physical injury" to both his passenger and the tanker truck driver.

## DISCUSSION

### I. Admission of evidence on passenger's injuries and medical treatment

¶4     Before trial, Miles moved in limine to exclude evidence of the passenger's medical records and any testimony by Dr. Warneke, the passenger's treating physician after the accident. Miles argued evidence of the passenger's post-accident treatment was precluded by the physician-patient privilege, which the passenger had not waived.[1] *See* A.R.S. § 13-4062(4) ("A physician or surgeon . . . [shall not be examined as a witness] without consent of the physician's or surgeon's patient . . . as to any information acquired in attending the patient which was necessary to enable the physician or surgeon to prescribe or act for the patient.").

---

[1]Any information bearing on the relationship between Miles and his passenger and on the latter's whereabouts and unavailability for trial presumably was discussed at the hearing on Miles's motion in limine. The transcript of that hearing, however, was not furnished to this court. Accordingly, we presume the missing portions of the record support the trial court's ruling. *See State v. Brooks*, 107 Ariz. 364, 365, 489 P.2d 1, 2 (1971).

¶5	During a hearing on pretrial motions, the trial court denied Miles's request to exclude evidence of the passenger's injuries, treatment, and medical records, apparently based on its finding that Miles lacked standing to assert the privilege on behalf of the passenger.[2]	Shortly before trial, Miles asked the court to reconsider that ruling, citing *Tucson Medical Center, Inc. v. Rowles*, 21 Ariz. App. 424, 520 P.2d 518 (1974).  The trial court again denied Miles's request, finding *Rowles* "factually dissimilar and . . . inapplicable to the matter at bar."

¶6	During trial, Warneke testified about the severity of the passenger's injuries, which included numerous cuts, a large loss of blood, and a dislocated hip.  The passenger's post-accident medical records also were admitted into evidence.  As noted above, in finding Miles guilty of aggravated assault, the jury found the offense was a dangerous offense because it had caused "serious physical injury" to the passenger.  *See* A.R.S. §§ 13-604(W)(4)(d); 13-1204(A)(1).

¶7	As he did below, Miles contends the trial court erred in admitting the foregoing evidence because the passenger did not waive his physician-patient privilege. Without such evidence, Miles argues, his conviction for aggravated assault and the jury's related dangerous-nature finding should be vacated.  "The question of whether a privilege exists is generally a legal question that is subject to our de novo review." *State v. Wilson*,

---

[2]The minute entry of the hearing on Miles's motion in limine does not include the trial court's ruling on the privilege issue.  But it is undisputed the court denied that motion on the ground Miles lacked standing to assert the passenger's privilege.

200 Ariz. 390, ¶ 4, 26 P.3d 1161, 1164 (App. 2001). "We also review de novo the question of whether a party has waived a privilege, unless that question hinges on resolution of conflicting facts or witness credibility issues." *Id.* (citation omitted). Similarly, issues relating to a party's standing are reviewed de novo. *See Alliance Marana v. Groseclose*, 191 Ariz. 287, 289, 955 P.2d 43, 45 (App. 1997).

¶8 Under § 13-4062(4), "a person's medical records and oral communications to physicians are protected by the physician-patient privilege" unless the patient waives it. *State v. Morales*, 170 Ariz. 360, 363, 824 P.2d 756, 759 (App. 1991). The state contends the passenger "apparently waived [the privilege] in a signed release." In its response to Miles's motion for reconsideration of the trial court's in limine ruling, the state asserted that the passenger had signed an "Authorization for Disclosure of Protected Health Information" sometime during his treatment and that the authorization "covered" and "permitted" Dr. Warneke's testimony.[3] The record, however, contains no such form, and without it, we cannot conclude the passenger affirmatively waived his right to assert the privilege on either

---

[3]Miles contended below that the document was merely a "generic records release form" and that it did not constitute a waiver of the passenger's privilege. Similarly, in his reply brief, Miles asserts the authorization form "only allowed law enforcement to obtain, but not disclose or use at trial, certain medical records." We are unable to address these assertions because the record contains neither the authorization form itself nor any other evidence relating to it. In any event, as Miles points out, "[i]t was for the trial court to determine whether [the passenger had] waived the privilege," and the court made no such finding.

5

his medical records or Warneke's testimony.[4]  The absence of any showing of waiver, however, does not end our inquiry.  We must still address the related questions of whether the physician-patient privilege applies in this context and whether Miles has standing to assert it.

¶9        In *Benton v. Superior Court*, 182 Ariz. 466, 467, 897 P.2d 1352, 1353 (App. 1994), Division One of this court held: "[T]he State may, without the permission of a victim, obtain the victim's medical records when such records are needed for the prosecution of a criminal case."  *Benton* involved an uncooperative victim of a domestic violence incident who refused to release her medical records to the state to use in its prosecution of her partner, the alleged abuser.  In concluding that the victim's "medical records are neither protected by the Victims' Bill of Rights[, A.R.S. §§ 13-4419(C), 13-4434,] nor the physician-patient privilege," 182 Ariz. at 470, 897 P.2d at 1356, the court reasoned that, "since there was no physician-patient privilege at common law, it must be strictly construed." *Id.* at 469, 879 P.2d at 1355.  The court further stated that "the public's interest

---

[4]*See State v. Geist*, 142 Ariz. 375, 379, 690 P.2d 94, 98 (App. 1984) (trial court did not abuse its discretion in finding that authorizing release of one's medical records to department of public safety was not sufficient to waive privilege in criminal proceeding); *see also Bain v. Superior Court*, 148 Ariz. 331, 334, 714 P.2d 824, 827 (1986) ("[W]aiver of the physician-patient privilege is two-fold: where a privilege holder (1) offers himself as a witness and voluntarily testifies with reference to privileged communications concerning the condition, . . . or (2) places a particular medical condition at issue by means of a claim or affirmative defense.").  We also note that "the burden of demonstrating waiver [of the physician-patient privilege] rests with the party seeking to overcome the privilege." *Alcon v. Spicer*, 113 P.3d 735, 739 (Colo. 2005).

in protecting victims outweighs the privacy interest reflected in the physician-patient privilege." *Id.* at 468, 897 P.2d at 1354; *see generally State v. Karcher*, 98 N.E.2d 308, 312 (Ohio 1951) ("[C]ourts have sometimes sought, by main force, to set limits [on the physician-patient privilege] and prevent its evil effects, namely, in cases where the physician . . . has acted *on behalf of the victim* of a crime.").

¶10        In *State v. Wilson*, 200 Ariz. 390, 26 P.3d 1161 (App. 2001), this court distinguished *Benton* and upheld a claim of privilege. *Wilson* involved a defendant charged with having made and pursued a fraudulent workers' compensation claim. Relying on *Benton*, the state argued the physician-patient privilege should not apply to prevent the state from eliciting testimony from the defendant's treating physicians in the case against him. *Id.* ¶ 10. Although we agreed "'the physician-patient privilege has never been absolute,'" *id*. ¶ 11, *quoting Benton*, 182 Ariz. at 469, 897 P.2d at 1355, we declined to carve out a broad, crime-fraud exception to the privilege in the "particular context" of a criminal defendant's assertion of the privilege on his or her own behalf. *Id*. That context was materially different and distinguishable from *Benton*'s, in which an uncooperative victim/third party sought to assert the privilege, not necessarily to protect her own privacy, but rather, to protect a criminal defendant who allegedly had assaulted and injured her.

¶11        Neither *Benton* nor *Wilson*, however, involved a situation such as this, in which a criminal defendant seeks to assert a privilege on behalf of a victim whose injuries and resulting need for medical treatment were caused by the defendant's actions. In this

7

context, we agree with the view of most, if not all, courts that have addressed the issue: even assuming the physician-patient privilege applies to the victim, here, Miles's passenger, a criminal defendant does not have standing to assert the privilege on the victim's behalf in an attempt to shield himself or herself from prosecution. *See* 81 Am. Jur. 2d *Witnesses* § 465 (2004) ("Because the physician-patient privilege is intended for the patient's benefit, the defendant in a criminal prosecution has no right to object to the testimony of a physician . . . concerning communications made by the crime victim to the physician, or information gained from the victim by the physician in a professional relationship, since the privilege is personal to the victim or his or her estate.").

¶12        In *State v. Boehme*, 430 P.2d 527, 536 (Wash. 1967), a case in which the defendant was convicted of assault for having attempted to poison his wife, the court held "the defendant could not assert the doctor-patient privilege flowing to . . . the . . . victim of the alleged crime." Addressing a privilege statute similar to § 13-4062(4), the Washington Supreme Court reasoned that the statute's purpose was "to surround communications between patient and physician with the cloak of confidence, and thus allow complete freedom in the exchange of information between them to the end that the patient's ailments may be properly treated." 430 P.2d at 535. The court further stated that the privilege was designed to protect a patient for purposes of treatment and "should not, by unrealistic or impractical application, become a means whereby criminal activities of third persons may

8

be shielded from detection, prosecution, and punishment, however magnanimous, compassionate or conciliatory the victim might otherwise wish to be." *Id*. at 536.

¶13 In interpreting statutory physician-patient privileges similar to § 13-4062(4), several other courts have come to the same conclusion as the Washington Supreme Court, determining that a defendant does not have standing to assert the privilege on a victim's behalf. *See, e.g., Wimberley v. State*, 228 S.W.2d 991, 993 (Ark. 1950) ("The doctrine of privileged communications only extends to the physician's patients and himself. A defendant in a prosecution for crime has no right to claim the protection."); *People v. Palomo*, 31 P.3d 879, 885 (Colo. 2001) ("[I]t falls not to [a] defendant . . . to raise issues concerning the medical records in [the victim's] file . . . ."); *State v. Evans*, 802 S.W.2d 507, 511 (Mo. 1991) (defendant convicted of raping his girlfriend was "without standing to object to the introduction of [her] records"); *In re Grand Jury Proceedings (Doe)*, 452 N.Y.S.2d 361, 363 (N.Y. 1982) ("[A] person . . . subject to proceedings for having committed crimes against an individual should not be permitted to assert the victim's physician-patient privilege as a bar to production of relevant medical records or testimony."). We agree with the reasoning and conclusions of those courts that have found the privilege inapplicable in this context based on lack of standing.

¶14 In an effort to avoid this result, Miles cites *Tucson Medical Center, Inc. v. Rowles*, 21 Ariz. App. 424, 520 P.2d 518 (1974). *Rowles* was a special action that arose from a discovery request and ruling in a medical malpractice case against a hospital. *Id.* at

9

425, 520 P.2d at 519. The plaintiffs sought to discover the medical records of another patient ("Jane Doe") of the hospital who was not directly involved in the case and, more importantly, who presumably had no reason to know that the case existed or that her records were pertinent or would possibly be the subject of a discovery request. In interpreting A.R.S. § 12-2235, the civil counterpart to § 13-4062(4),[5] this court ruled that "hospital records are covered by the physician-patient privilege" and that a hospital must "assert this privilege when neither the patient nor his physician are parties to the proceeding." 21 Ariz. App. at 429, 520 P.2d at 523. This court also

> fe[lt] obliged to carry this reasoning one step further and h[e]ld that when the holder of the physician-patient privilege is absent from the proceedings with no opportunity to assert the privilege, it is incumbent upon the trial court to frame its discovery orders in a manner which will protect an absent patient.

*Id*.

¶15　　　　We agree with the trial court's conclusion that *Rowles* is not applicable or controlling here. Unlike the "Jane Doe" in *Rowles*, who was totally uninvolved in the underlying civil case and whose hospital records had been sought without her knowledge or consent, the record here does not suggest that Miles's passenger was an unaffected party who had no way of knowing his medical records would be relevant and sought in a criminal prosecution arising from a collision in which he had been injured. In view of Miles's failure

---

[5]Because the two statutes are "not significantly different[,] . . . there is no sound reason why the legal interpretation of the statutes should be any different." *State v. Santeyan*, 136 Ariz. 108, 110, 664 P.2d 652, 654 (1983).

to furnish the pertinent transcript of the hearing on his motion in limine, *see* n.1, *supra*, and the trial court's ruling that *Rowles* was "factually dissimilar" to this case, the court could have concluded that the passenger had had reason to know his medical records and treatment details would be of interest in the prosecution against Miles and, therefore, had had an opportunity to protect his interests and assert his privilege had he chosen to do so.[6]

¶16 Importantly, *Rowles* did not involve or address the competing policies at issue here. On the one hand, "[t]he [physician-patient] privilege is primarily intended to protect 'communications made by the patient to his physician for the purpose of treatment,' so as 'to insure that the patient will receive the best medical treatment by encouraging full and frank disclosure of medical history and symptoms by a patient to his doctor.'" *Wilson*, 200 Ariz. 390, ¶ 5, 26 P.3d at 1164, *quoting State v. Santeyan*, 136 Ariz. 108, 110, 664 P.2d 652, 654 (1983), and *Lewin v. Jackson*, 108 Ariz. 27, 31, 492 P.2d 406, 410 (1972); *see also Rowles*, 21 Ariz. App. at 425, 520 P.2d at 519. On the other hand, as most courts have concluded, the law should not permit a criminal defendant to impede or prevent a prosecution by invoking a victim's privilege, even when the victim is uncooperative, "magnanimous, compassionate or conciliatory." *Boehme*, 430 P.2d at 536.

---

[6]We note that, at Miles's sentencing hearing, defense counsel stated the passenger had "elected not to participate in the case" and apparently "was satisfied with the fact that Mr. Miles took care of him—personally took care of him" after the collision.

¶17 As the court in *Benton* observed, "the public's interest in protecting victims outweighs the privacy interest reflected in the physician-patient privilege." 182 Ariz. at 468, 897 P.2d at 1354. If that is so when a victim actually attempts to invoke the privilege, as occurred in *Benton*, it is more so when, as here, a defendant seeks to exclude from evidence relevant medical testimony or records by asserting the privilege of a victim who has neither appeared in the case nor expressed any concerns about confidentiality. In our view, allowing a criminal defendant in a case like this to invoke a victim's privilege could result in great mischief and miscarriages of justice; but disallowing that practice poses little if any danger of frustrating the basic purposes that underlie the privilege. As the state persuasively argues, "it would make a mockery of *Rowles* to hold that a criminal defendant, simply by invoking the physician-patient privilege on the victim's 'behalf,' could immunize himself from prosecution for injuring the victim."

¶18 In accord with the majority rule, we hold that Miles, as the defendant who caused the passenger's injuries, does not have standing in this criminal case to assert the physician-patient privilege on the passenger's behalf. Consequently, the trial court did not err in denying Miles's motion in limine and in admitting Warneke's testimony and the passenger's medical records.

**II. Sufficiency of the evidence**

¶19 As noted above, in addition to the charges that were submitted to the jury, Miles was charged with two counts of aggravated DUI, one count based on DUI while his

license had been suspended and the other on his having committed or been convicted of two prior DUI violations within the previous sixty months. *See* A.R.S. § 28-1383(A)(1), (2). Miles stipulated at trial that, at the time of the accident, he had been aware that his driver's license was suspended and that he had been convicted of two DUI violations within the previous sixty months.

**¶20**        The state presented other evidence on the DUI charges, including a lay witness's testimony that Miles's truck had smelled "like blood mixed with alcohol" and that, after the accident, Miles's eyes had been "halfway open . . . like [he was] really drunk." Similarly, sheriff's deputies testified about having smelled alcohol on Miles's breath, seen his bloodshot eyes, and heard his slurred speech. And a criminalist testified that "[alcohol] depresses the function of our brain."

**¶21**        Nonetheless, the trial court concluded the evidence was insufficient to support a finding that Miles was guilty of the DUI charges and, pursuant to Miles's Rule 20 motion, granted a judgment of acquittal on those counts. Based on that ruling, the court later instructed the jury to "disregard any evidence that was presented as to [the DUI counts] and any evidence regarding alcohol."

**¶22**        Miles argues the remaining evidence was insufficient to prove he had been criminally reckless, but rather, "at best supported a finding that [he] was civilly negligent." He argues the verdicts on the other three, non-DUI counts likely were based on impermissible evidence of alcohol the court had instructed the jury to disregard. We first

13

note that "jurors are presumed to follow instructions." *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996); *State v. Herrera*, 174 Ariz. 387, 395, 850 P.2d 100, 108 (1993). Therefore, absent any indication otherwise, we will not speculate on whether the jury considered stricken evidence in deliberating and returning verdicts on the other three counts. Rather, we analyze whether the admissible evidence was sufficient to support Miles's convictions on those counts.

¶23 Every conviction must be based on "substantial evidence." Ariz. R. Crim. P. 20(a), 16A A.R.S. "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996); *see also State v. Terrazas*, 189 Ariz. 580, 586, 944 P.2d 1194, 1200 (1997). In evaluating the evidence on appeal, we view it in the light most favorable to upholding the verdict. *State v. Sullivan*, 187 Ariz. 599, 600, 931 P.2d 1109, 1110 (App. 1996). We will reverse a conviction for insufficient evidence "only if 'there is a complete absence of probative facts to support [the jury's] conclusion.'" *State v. Carlisle*, 198 Ariz. 203, ¶ 11, 8 P.3d 391, 394 (App. 2000), *quoting State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988); *see also State v. Alvarado*, 178 Ariz. 539, 542, 875 P.2d 198, 200 (App. 1994).

¶24 Each of Miles's convictions required proof that he had acted with a mental state of recklessness. *See* A.R.S. §§ 13-1203(A)(1); 13-1201(A); 13-1602(A). Arizona law defines "recklessly" as: "[W]ith respect to a result or to a circumstance described by a

14

statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." A.R.S. § 13-105(9)(c). The statute also requires that "[t]he risk . . . be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.*

**¶25** Miles cites *In re William G.*, 192 Ariz. 208, 936 P.2d 287 (App. 1997), in support of his argument that his behavior constituted nothing more than civil negligence. In *William G.*, the court held that a juvenile who had ridden on a shopping cart in a parking lot and had hit a parked car had not been criminally reckless. In so holding, the court distinguished civil negligence, in which a party is unaware of potential results, from recklessness, in which a party is "aware of and consciously disregard[s] the risk his conduct is creating." *Id.* at 213, 963 P.2d at 292. But Miles's conduct was hardly similar to that of the juvenile in *William G.*, in which the risk created by the parking lot joyride on a shopping cart could not be characterized as both "unreasonable" and "substantial." *Id.* at 214, 963 P.2d at 293. Rather, even without the evidence relating to Miles's use of alcohol,[7] the other

---

[7]Although the state argues the "jurors . . . were free to consider, based on their common experience, whatever else bloodshot, half-lidded eyes, slurred speech, and bad driving might indicate," the trial court clearly ruled the state had failed to show that Miles had been "affected to the slightest degree" by any alcohol he had drunk and, therefore, the state could not use the evidence about alcohol to prove his recklessness. Because the state presumably introduced the evidence about Miles's bloodshot eyes and slurred speech to prove the DUI charges and because the court instructed the jury to "disregard . . . any evidence regarding alcohol," we must assume the jurors did indeed disregard any evidence associated with alcohol and based their verdicts solely on admissible evidence. *See State*

evidence was sufficient to support a finding of Miles's recklessness when viewed in the light most favorable to sustaining the verdicts.

¶26 A lay witness who had been driving behind Miles testified that Miles's truck had entered Drexel Road with its tires spinning, going fast; that the stop sign Miles had failed to observe had been clearly visible; and that Miles had not appeared to slow down at all at that stop sign. The driver of the tanker truck testified that Miles had approached his vehicle "coming very fast" with screeching tires. Another witness testified that Miles's vehicle had "hit [the tanker truck] so hard that the rear end of the truck lifted up a little bit and slammed to the ground." And a police officer testified that the skid marks left by Miles's vehicle did not start until the beginning of the intersection and that Miles's truck had been traveling at an absolute minimum speed of thirty-two miles per hour when the skid marks started.

¶27 Based on the evidence that Miles had failed to stop or even slow down at a clearly visible stop sign and that he had entered the intersection "very fast," with tires screeching, a reasonable juror could have found that Miles had been aware of and had consciously disregarded a substantial and unjustifiable risk that other motorists or pedestrians could be seriously injured. Similarly, a reasonable juror could have found that his actions constituted a gross deviation from conduct a reasonable person would observe in a similar situation. *See Savage v. State*, 650 N.E.2d 1156, 1161 n.10 (Ind. Ct. App.) ("A

*v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).

16

driver who speeds and who disregards stop signs creates a situation in which his disregard of potential harm is a substantial deviation from acceptable standards of conduct, and is considered reckless . . . ."), *vacated in part on other grounds*, 655 N.E.2d 1223 (Ind. 1995); *State v. Morrison*, No. WD 64025, 2005 WL 2124462 (Mo. Ct. App. Sept. 6, 2005) (driver acted in criminally reckless manner "by failing to take any evasive action until he was within four to six car lengths of the [vehicle with which he collided], when it was too late to prevent a collision at his excessive speed"); *State v. Herring*, 502 S.W.2d 405, 409 (Mo. Ct. App. 1973) (finding motorist's recklessness "may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others"). Accordingly, the evidence was sufficient to support a finding under § 13-105(9)(c) that Miles had been reckless.

## III. Jury instructions

¶28 Miles lastly contends "[t]he trial court committed fundamental error by failing to give a limiting instruction regarding [his] prior misdemeanor DUI convictions."[8] To establish fundamental error, a defendant must show the "'error [goes] to the foundation of

---

[8]Because Miles failed to object to the jury instructions, he is "preclude[d] . . . from claiming error on appeal absent fundamental error." *See State v. Van Adams*, 194 Ariz. 408, ¶ 17, 984 P.2d 16, 23 (1999); *see also* Ariz. R. Crim. P. 21.3(c), 17 A.R.S. ("No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof . . . unless the party objects thereto before the jury retires to consider its verdict . . . .").

17

the case, . . . takes from the defendant a right essential to [the] defense, and . . . [is] of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* ¶ 20.

**¶29** As noted above, the trial court told the jury Miles had stipulated that, at the time of the accident, his license had been suspended; that he had known about the suspension; and that he had been convicted of two DUI violations within the prior sixty months. Those facts constituted elements of the aggravated DUI counts charged. *See* A.R.S. § 28-1383(A)(1), (2). As also noted above, after the trial court granted a judgment of acquittal on the DUI counts, it instructed the jury to "disregard any evidence that was presented as to [the DUI counts] and any evidence regarding alcohol." Miles argues that instruction was "inadequate to address the impact of the prior DUI convictions" because it did not "directly address the highly prejudicial evidence" of those convictions. Because the trial court informed the jury that Miles had two prior DUI convictions, Miles argues, "[t]he jury would necessarily infer . . . it was to consider the other acts in determining [his] guilt," contrary to Rule 404(b), Ariz. R. Evid., 17A A.R.S.

**¶30** Again, however, "jurors are presumed to follow instructions." *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996); *State v. Herrera*, 174 Ariz. 387,

18

395, 850 P.2d 100, 108 (1993). We therefore presume the jurors disregarded all evidence that had been presented to prove the aggravated DUI charges, including the fact that Miles had been convicted of two prior DUI violations. Consequently, Miles has not met his burden of establishing prejudice from any alleged fundamental error. *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607. But, even assuming the trial court's general instruction to disregard any evidence relating to the DUI counts did not adequately direct the jury to disregard Miles's previous DUI convictions, the court's instruction did not constitute fundamental error.

¶31 Although evidence of other acts is not allowed to show that a defendant acted in conformity with them, Rule 404(b), Ariz. R. Evid., a trial court is not required, sua sponte, to give a limiting instruction on such evidence. *See State v. Taylor*, 127 Ariz. 527, 530, 622 P.2d 474, 477 (1980) ("We cannot find that the failure of the trial court to instruct without a request by counsel deprived appellant of a right essential to his defense nor of a fair trial."); *State v. Francis*, 91 Ariz. 219, 222-23, 371 P.2d 97, 99 (1962) ("This Court has repeatedly held that if a defendant wants an instruction limiting the effect of certain evidence he must request it, and the failure of the trial court to so instruct is not error in the absence of a request therefor."); *State v. Hernandez*, 7 Ariz. App. 200, 205, 437 P.2d 952, 957 (1968) (when party does not request instruction, "failure to give [a prior act] limiting instruction is not fundamental error").

¶32 Miles attempts to distinguish *Taylor*, stating that, in that case, "the other-act evidence was properly before the jury on a material issue—the defendant's credibility. . . . Here, there was no material issue before the jury to which the other-act evidence was relevant and the court's endangerment instruction made the other-act evidence relevant."[9] We are not persuaded. The trial court specifically instructed the jury not to consider any alcohol-related evidence, and defense counsel reiterated in closing argument that alcohol was "not part of the case." Finally, that the facts of this case differ from those in *Taylor* is of no moment. We find no fundamental error relating to the trial court's jury instructions.

**DISPOSITION**

¶33 Miles's convictions and sentences are affirmed.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge


_____

---

[9]In its jury instructions on the endangerment charge, the trial court defined "recklessly" to include "[a] person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication."

WILLIAM E.  DRUKE, Judge*


*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed October 7, 2005.