NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ERICK REMY-APODACA, *Appellant.*

No. 1 CA-CR 13-0940
FILED 3-19-2015

---

Appeal from the Superior Court in Maricopa County
No. CR2011-005053-002
The Honorable David B. Gass, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Michael J. Brown joined.

---

**J O N E S**, Judge:

¶1 Erick Remy-Apodaca appeals his convictions and sentences for one count of possession of marijuana for sale and three counts of misconduct involving weapons. Remy-Apodaca's defense counsel has searched the record on appeal, and asserts having found no arguable question of law that is not frivolous. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), counsel asks this Court to search the record for fundamental error. Remy-Apodaca was granted an opportunity to file a supplemental brief *in propria persona*, but he did not do so. After reviewing the record, we find no fundamental error. Accordingly, we affirm Remy-Apodaca's convictions and sentences.

## FACTS[1] AND PROCEDURAL HISTORY

¶2 In October 2010, during the course of an unrelated drug investigation, Glendale police officers observed a known money courier and proceeded to follow his vehicle. The money courier drove through multiple parking lots until it eventually stopped in a Walgreen's parking lot. There, the money courier exited his vehicle and entered a white truck that had just arrived. After a few minutes, the money courier returned to his vehicle, and both vehicles left the parking lot. The officers, already knowing the money courier's residence, chose to follow the truck, which led them to a residence on 91st Drive (the house).

¶3 Officers then conducted surveillance on the house on four non-consecutive days over a two-week period. Throughout the surveillance, Remy-Apodaca was seen coming and going from the house in a white Ford F-150, which was parked in the driveway of the house at the beginning and end of each day. He was also observed outside the house smoking cigarettes and watching the street, and performing mundane chores, such as getting takeout food and maintaining the F-150 in the driveway.

¶4 On October 21, officers executed a search warrant on the house after individuals associated with the location were observed making a "vehicle switch," a common procedure for trafficking drugs. Officers gained entry to the house with a key recovered from Remy-Apodaca when

---

[1] "We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts." *State v. Miles*, 211 Ariz. 475, 476, ¶ 2, 123 P.3d 669, 670 (App. 2005).

he was stopped in the F-150 a short while earlier in connection with this investigation.

¶5        The house itself lacked furnishings or personal effects, which an officer testified was common with drug stash houses.  In one bedroom of the house, officers discovered 431 pounds of a substance later confirmed to be marijuana, which was almost entirely packed into plastic-wrapped bales.  Testimony at trial established that a typical user would use only a quarter-ounce of marijuana per day, and that the total value of the marijuana was approximately $200,000.  In another bedroom, officers discovered a firearm standing in a corner.  In that same room were items that indicated another person in the operation, Enrique, was its occupant.  In the kitchen, officers found ledgers that listed weights and prices of marijuana.

¶6        In the master bedroom, officers discovered an assault rifle, a revolver, and two pistols on the bed, and a shotgun standing in the corner.  In the master closet, officers observed, but did not impound, a prescription medicine bottle containing the name "ERICK," insulin and syringes, cigarettes, and a pair of flip-flops that resembled those worn by Remy-Apodaca throughout the surveillance.

¶7        In addition to the house key, officers found a utility bill for the house and $1,380 in cash on Remy-Apodaca's person.  Later, during the booking process at the police station, Remy-Apodaca asked an officer when he would be able to get his insulin, which he stated was at his house.

¶8        Remy-Apodaca was indicted on five counts: possession of marijuana for sale in violation of Arizona Revised Statutes (A.R.S.) section 13-3405(A)(2)[2] (count 1); misconduct involving weapons by "[u]sing or possessing a deadly weapon during the commission of any felony [drug] offense" in violation of A.R.S. § 13-3102(A)(8) (counts 2 through 4); and money laundering in the second degree in violation of A.R.S. § 13-2317(B)(3) (count 5).  Before trial, the State voluntarily dismissed count 5.  A jury convicted Remy-Apodaca of the remaining counts as charged.

¶9        The trial court sentenced Remy-Apodaca to a slightly aggravated term of 7.5 years' imprisonment on count 1 and imposed a total fine of $47,750.  *See* A.R.S. § 13-3405(D).  On counts 2 through 4, the court

---

[2]        Absent material revisions from the relevant date, we cite a statute's current version.

suspended the imposition of sentence and placed Remy-Apodaca on supervised probation for a period of three years following his release from prison. The court also awarded Remy-Apodaca 247 days of presentence incarceration credit.

## DISCUSSION

¶10  The record reflects Remy-Apodaca received a fair trial. As far as the records reveals, he was represented by counsel at all stages of the proceedings and was present at all critical stages. The court did not conduct a voluntariness hearing, but neither Remy-Apodaca nor the evidence put into question the voluntariness of his statements to police. *See State v. Smith*, 114 Ariz. 415, 419-20, 561 P.2d 739, 743-44 (1977) (finding no error in lack of voluntariness hearing where defendant did not object to admission of his statements); *see also State v. Finn*, 111 Ariz. 271, 275, 528 P.2d 615, 619 (1974).

¶11  Sufficient evidence was provided to allow a reasonable jury to convict Remy-Apodaca of the crimes charged. Although Remy-Apodaca was entitled to only an eight member jury, the jury panel here was comprised of twelve members.[3] The jury was properly instructed upon the elements of the charges and that the burden of proof rested with the State. The jury returned a unanimous verdict, which was confirmed through a poll of the jurors, and there is no indication of jury misconduct. The court received and considered a presentence report, afforded Remy-Apodaca an opportunity to speak before his sentencing, and addressed the aggravating and mitigating factors it considered in imposing sentence. Additionally, the sentences imposed were within the statutory limits.

## CONCLUSION

¶12  We have reviewed the entire record for reversible error and find none. Therefore, we affirm Remy-Apodaca's convictions and sentences. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881.

---

[3] As originally charged, Remy-Apodaca faced a possible sentence exceeding thirty years, which triggered the requirement for a panel of twelve jurors. *See* A.R.S. § 21-102(A). When the State dismissed count 5, the maximum possible sentence was reduced to less than thirty years, requiring only an eight member jury. *See* A.R.S. § 21-102(B). By the time the parties realized the effect of the dismissal, the jury had been selected and the State had proceeded to put on its case, so they agreed to continue with a twelve person jury.

**¶13** After the filing of this decision, defense counsel's obligations pertaining to Remy-Apodaca's representation in this appeal have ended. Defense counsel need do no more than inform Remy-Apodaca of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984).

**¶14** Upon the Court's own motion, Remy-Apodaca has thirty days from the date of this decision to file, if he wishes, an *in propria persona* motion for reconsideration. *See id.* Remy-Apodaca also has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a).



Ruth A. Willingham · Clerk of the Court
F I L E D : ama