NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

VICTORIA MIRANDA, *Appellant*.

No. 1 CA-CR 14-0452
FILED 7-2-2015

Appeal from the Superior Court in Maricopa County
No.  CR2013-002131-001
The Honorable Phemonia L. Miller, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Adams
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Jon W. Thompson joined.

---

**J O N E S**, Judge:

¶1        Victoria Miranda appeals her conviction for one count of theft, a class three felony.  After searching the entire record, Miranda's defense counsel has identified no arguable non-frivolous question of law. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error.  Miranda was afforded the opportunity to file a supplemental brief *in propria persona* which she elected not to do. After reviewing the record, we find no error.  Accordingly, Miranda's conviction and sentence are affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        In 2009, Miranda, a licensed attorney, received a phone call from Maria, a previous client who was calling from jail, and agreed to represent her in the criminal matter for which she was incarcerated. Shortly thereafter, Maria's sister produced $18,000 to post as bond for Maria's release.   Miranda convinced Maria's sister to post the bond under Miranda's name because she was the attorney handling the case.  After Maria was sentenced in the criminal matter, the $18,000 bond was released to Miranda.  The following day, Miranda deposited the check in her bank account and immediately dispersed the funds to herself, minus a seven dollar transaction fee, in the form of $993 cash and a $17,000 cashier's check made payable to "Victoria Miranda."

¶3        After Maria was released from jail in March 2010, she contacted Miranda several times demanding the return of the $18,000.  By

---

[1]      "We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdict[]." *State v. Miles*, 211 Ariz. 475, 476, ¶ 2 (App. 2005) (citing *State v. Riley*, 196 Ariz. 40, 42, ¶ 2 (App. 1999)).

September 2011, the money had still not been returned, and Maria filed a complaint against Miranda with the State Bar of Arizona.

¶4            In January 2012, the State Bar gave Miranda notice of the allegations that she had stolen $18,000 from Maria.  In response, Miranda did not assert the existence of a fee agreement entitling her to the money.  However, in April 2012, Miranda produced a written fee agreement, purportedly signed by Maria, stating that Maria agreed to pay $18,000 for legal representation.  Despite the newly produced agreement, Miranda consented to disbarment in May 2012, and the State Bar referred the matter to the Phoenix Police Department for further investigation.

¶5            In April 2013, Miranda was indicted and charged with one count of theft and one count of forgery.  At trial, Miranda testified she was entitled to the $18,000 because of the work she completed for Maria's criminal case and other related matters.  A forensic document examiner testified that Maria's signature on the fee agreement was authentic, but Maria testified she never signed an agreement, and the jail had no record that Miranda visited Maria in jail on the date listed next to Maria's signature or that it received any documents for Maria to sign on that date.  Maria also testified she agreed to and did pay Miranda $5,000 for legal representation and denied Miranda's claim that additional amounts were owed from a past-due bill on another matter.  Furthermore, the State presented evidence that Miranda sent letters promising to return the funds to Maria.

¶6            Following an unsuccessful motion for judgment of acquittal, the jury found Miranda guilty of theft and acquitted her of forgery.  Miranda was sentenced to two days of incarceration, given credit for two days of time served, and placed on unsupervised probation for eighteen months.  The court also ordered Miranda be subject to further sentencing should she fail to comply with the terms of her probation.  Miranda timely appealed.

## DISCUSSION

¶7            A person commits theft if "without lawful authority, the person knowingly: . . . [c]ontrols property of another with the intent to deprive the other person of such property."  Ariz. Rev. Stat. (A.R.S.) § 13-1802(A)(1).[2]  Although Miranda and Maria gave conflicting testimony, sufficient evidence was presented to support the jury's conclusion that

---

[2]        Absent material revisions from the relevant date, we cite a statute's current version.

Miranda took $18,000 from Maria without her permission and with no intent to return it. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004) (noting that, when faced with conflicting evidence, "it [i]s for the jury to weigh the evidence and determine the credibility of witnesses") (citing *State v. Cid*, 181 Ariz. 496, 500 (App. 1995)).

**¶8**   Having reviewed the entire record for reversible error, we find none. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). All proceedings complied with the Arizona Rules of Criminal Procedure. So far as the record reveals, Miranda was represented by counsel at all stages of the proceedings and was present at all critical stages. The jury was properly comprised of eight jurors, and the record shows no evidence of jury misconduct. *See* A.R.S. § 21-102(B); Ariz. R. Crim. P. 18.1(a). Miranda was given the opportunity to speak at sentencing, and the trial court stated on the record the evidence, materials, and factors it considered in imposing the sentence. Additionally, the sentence imposed was within the statutory limits.

## CONCLUSION

**¶9**   Miranda's conviction and sentence are affirmed. After the filing of this decision, defense counsel's obligations pertaining to Miranda's representation in this appeal have ended. Defense counsel need only inform Miranda of the outcome of this appeal and her future options, unless, upon review, counsel finds an issue appropriate for review by our supreme court. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

**¶10**   Miranda has thirty days from the date of this decision to proceed, if she wishes, with an *in propria persona* petition for supreme court review. *See* Ariz. R. Crim. P. 31.19(a). Upon the Court's own motion, we also grant Miranda thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama