NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

v.

JEFFREY JAMES HAMBY, *Appellant.*

No. 1 CA-CR 18-0411
FILED 6-20-2019

Appeal from the Superior Court in Mohave County
No. S8015CR201700513
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

**W E I N Z W E I G**, Judge:

¶1            Jeffrey Hamby appeals his convictions and sentences for three counts of aggravated assault, two counts of criminal damage and two counts of driving under the influence (driving while impaired to the slightest degree and driving while having a certain drug or metabolite in the body). He argues insufficient evidence supports the convictions. We disagree and affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            A few minutes before 6 p.m., Hamby was driving eastbound on a two-lane road in Kingman, weaving in and out of westbound traffic to pass vehicles in his path. Motorists testified that Hamby was driving at a "high rate of speed," "going well over 50" in a 40-MPH zone. A witness testified, "wow . . . [he] was going fast."

¶3            At one point, Hamby raced past two cars in a no-passing zone, but lost control when he returned to the eastbound lane, first veering onto the dirt shoulder and then overcorrecting into oncoming traffic, where two westbound motorcyclists, D.A. and J.G., approached. Hamby crashed into the lead motorcycle, "shear[ing] off" its left side and catapulting the driver, D.A., forward. The second motorcyclist, J.G., was still in Hamby's path and took evasive action to avoid a collision—slamming on the brakes and dropping his motorcycle, causing it to skid on the pavement.

¶4            Meanwhile, Hamby carried forward on the westbound dirt shoulder for around 600 feet before swerving "directly in front of [another westbound driver's] vehicle," causing that driver to slam on his brakes to avoid a collision. Hamby then returned to the eastbound lane and eventually stopped on the shoulder.

¶5            D.A. suffered serious injuries from the collision. In all, she endured nine leg infections and at least six surgeries, including the partial amputation of her left foot and toes. J.G. suffered less serious injuries, but needed physical therapy for pain in his left knee. Both motorcycles were destroyed.

¶6            Police interviewed Hamby at the scene. Officer Chaz Truver generally observed "some symptoms [in Hamby] that would be consistent with that of a narcotic," but did not elaborate. Officer Truver asked Hamby if he would consent to a blood draw because "[t]here was a lot going on at the scene," including the number of injuries, and Truver was therefore unable to perform a field sobriety test. Hamby agreed. His blood tested

positive for lorazepam and methadone, both within the therapeutic range, and an inactive metabolite of marijuana.

¶7     Lorazepam is a prescription drug and central nervous system depressant often used to manage anxiety. Lorazepam can impair driving by "mak[ing] you sleepy, drowsy, [or] slow[ing] your reaction time," even when taken as prescribed and at lower levels. Hamby testified he is prescribed a form of lorazepam for his anxiety, and had taken the drug two days before the incident.

¶8     Methadone is a narcotic commonly used "to help heroin addicts stave off the cravings for heroin." Much like lorazepam, methadone may impair driving by "slow[ing] your reaction time," and causing "sleep[iness]" and "over[] relax[ation]," even when taken within the therapeutic range. Hamby testified that he takes methadone to manage his heroin addiction. Indeed, Hamby visited a methadone clinic for a dose of methadone on the morning of the incident and took a taxi home rather than drive himself. The combination of lorazepam and methadone may "compound" a driver's adverse effects "even more."

¶9     The State charged Hamby with five felonies. As to D.A., the State charged Hamby with two counts of aggravated assault, a class 3 felony (Counts 1 and 2), and one count of criminal damage, a class 4 felony (Count 4). As to J.G., the State charged Hamby with one count of aggravated assault, a class 3 felony (Count 3), and one count of criminal damage, a class 5 felony (Count 5). The State also charged Hamby with two separate counts of driving under the influence, a class 1 misdemeanor; specifically, driving while impaired to slightest degree (Count 6) and driving with a certain drug or metabolite in the body (Count 7).

¶10    After a three-day trial, the jury found Hamby guilty as charged, and concluded that three counts (Counts 1, 2 and 3) were dangerous. Hamby was sentenced to time-served of 50 days on Counts 6 and 7. For the counts related to D.A., the court sentenced Hamby to concurrent presumptive terms of 7.5 years on Counts 1 and 2, and 2.5 years on Count 4. For the counts related to J.G., the court sentenced Hamby to concurrent presumptive terms of 7.5 years on Count 3, and 1.5 years on Count 5, to run consecutively to the sentences imposed for Counts 1, 2 and 4.

¶11    Hamby timely appealed. We have jurisdiction under Ariz. Const. art. 6, § 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A).

3

## DISCUSSION

**¶12** Hamby argues that his convictions were unsupported by sufficient evidence. We review challenges to the sufficiency of the evidence de novo, viewing evidence in the light most favorable to sustaining the verdict and resolving all reasonable inferences against the defendant. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011); *State v. Salman*, 182 Ariz. 359, 361 (App. 1994). We reverse for insufficient evidence only if there is a "complete absence of probative facts to support the conviction." *State v. Atwood*, 171 Ariz. 576, 597 (1992), *disapproved on other grounds by State v. Nordstrom*, 200 Ariz. 229, 241, ¶ 25 (2001).

### A. Aggravated Assault And Criminal Damage (Counts 1-5)

**¶13** Hamby argues the aggravated assault and criminal damage convictions (Counts 1-5) should be reversed because there is insufficient evidence of recklessness or causation.

**¶14** Recklessness is an element for aggravated assault and criminal damage. A.R.S. § 13-1602(A)(1) (criminal damage); A.R.S. § 13-1203(A)(1), -1204(A) (aggravated assault). A person acts recklessly when he or she "is aware of and consciously disregards a substantial and unjustifiable risk" created by his or her conduct. A.R.S. § 13-105(10)(c); *In re William G.*, 192 Ariz. 208, 213 (App. 1997). "The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." A.R.S. § 13-105(10)(c).

**¶15** The jury had ample evidence based on Hamby's erratic and unlawful driving to support a finding that he consciously disregarded a substantial and unjustifiable risk. *See, e.g.*, *State v. Miles*, 211 Ariz. 475, 482, ¶ 27 (App. 2005) (evidence sufficient to support a finding of defendant's recklessness when defendant failed to stop or slow down at a clearly visible stop sign and entered the intersection "very fast" with tires screeching). The record shows that he was speeding and weaving in and out of traffic on a two-lane road; that the collision and injuries resulted from his attempts to pass two vehicles in a no-pass zone; that his aggressive and erratic driving caused him to lose control of his vehicle, swerving from the eastbound dirt shoulder to the westbound dirt shoulder and back again; and that he kept driving into oncoming traffic after the collision and nearly caused another head-on collision. His driving was even more dangerous given the circumstances; it was rush hour and people were driving home from work.

¶16        Aside from his unlawful and erratic driving, Hamby tested positive after the crash for both lorazepam and methadone and had visited a clinic for a methadone dose the morning of the incident.  Both drugs may impair a driver, especially when taken together.  Indeed, Hamby had taken a taxicab home from his morning appointment at the methadone clinic, and police officers chose to drive Hamby home rather than letting him drive after the accident.  The jury thus heard evidence that Hamby chose to drive when his reaction time and judgment might have been impaired, which provides more evidence of recklessness.

¶17        Hamby also contests the causation finding.  He argues that insufficient evidence was presented that his recklessness caused the collision.  We disagree.  The record establishes that Hamby's actions were the factual and proximate cause of D.A.'s and J.G.'s injuries.  *See State v. Marty*, 166 Ariz. 233, 236 (App. 1990) ("In Arizona, both 'but for' causation and proximate cause must be established in a criminal case.").  Hamby does not argue that D.A.'s or J.G.'s actions caused or contributed to the collision in any way.  But for Hamby's erratic and unlawful driving, there would have been no collision, meaning D.A. would not have been thrown from her motorcycle and J.G. would not have been forced to throw down his motorcycle.  *See, e.g.*, *State v. Dodd*, 244 Ariz. 182, 185, ¶ 11 (App. 2017) (concluding a motorist's recklessness caused injuries when, among other things, his "high-speed, erratic driving directly caused two collisions").

### B.        Driving Under The Influence (Counts 6 And 7)

¶18        Hamby likewise contends "there was insufficient evidence to support the misdemeanor DUI convictions," which included separate offenses for driving while having a certain drug or metabolite in the body and driving while impaired to the slightest degree.  A.R.S. § 28-1381(A)(1), (3).  We address each in turn.

#### 1.        Driving With A Drug Or Metabolite In The Body

¶19        Hamby does not dispute that he had both lorazepam and methadone in his body, or argue it was permissible to drive with these substances in his body under A.R.S. § 13-3401 or A.R.S. § 28-1381(A)(3).  He instead argues he qualified for a "narrow safe harbor" under § 28-1381(D), which provides that "[a] person using a drug as prescribed by a medical practitioner who is licensed . . . and who is authorized to prescribe the drug is not guilty of violating [A.R.S. § 28-1381(A)(3)]." *State v. Bayardi*, 230 Ariz. 195, 198, ¶ 10 (App. 2012).  This is an affirmative defense which the defendant must prove by a preponderance of the evidence.  *Id.* at 198, ¶ 11.

¶20        Hamby claims he "presented proof by a preponderance of the evidence that he was under the care of a doctor for methadone maintenance, and used Ativan [lorazepam] as prescribed for anxiety." He did not. Hamby only offered his own self-serving testimony on this point. He did not produce a written prescription or doctor's letter; he never named the licensed doctor who prescribed these medications to him; and he never addressed whether he was taking them as prescribed. He provided no sworn testimony or unsworn statement from a physician, medical professional or "practitioner who is licensed" and "authorized to prescribe the drug[s]." A.R.S. § 28-1381(D).

¶21        The jury heard and weighed the evidence, including Hamby's testimony, before rejecting his defense. Because reasonable persons could have disbelieved Hamby's testimony or concluded that he had not established all the requirements of his affirmative defense, the jury properly could reject it under A.R.S. § 28-1381(D). Substantial evidence thus supports the conviction.

## 2.        Driving While Impaired To The Slightest Degree

¶22        Hamby last argues that insufficient evidence supports he was driving while impaired to the slightest degree. A.R.S. § 28-1381(A)(1). But Hamby tested positive for both lorazepam and methadone shortly after the incident. And the jury heard evidence that these drugs may impair drivers when taken within the therapeutic range, especially when taken together. We cannot find the record lacks evidence that Hamby was "impaired to the slightest degree."

## CONCLUSION

¶23        We affirm Hamby's convictions and sentences.

